(No. 36577.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* LOUIS F. GONZALES, Plaintiff in Error.

*Opinion filed May 25, 1962.—Rehearing denied September 27, 1962.*

JAMES E. BEAVER, appointed by the court, and KIRK-LAND, ELLIS, HODSON, CHAFFETZ & MASTERS, all of Chicago, for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED G. LEACH and E. MICHAEL O'BRIEN, Assistant Attorneys General, and JOHN T. GALLAGHER and M. ROBERT OSTROW, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

Louis Gonzales was indicted in the criminal court of Cook County for the sale of marijuana to Robert Lopez, and also for the unlawful possession of marijuana. (Ill. Rev. Stat. 1959, chap. 38, par. 192.28—3.) By stipulation the two indictments were consolidated for trial. A jury was waived, and after a trial before the court the defendant was convicted on both charges. On the indictment charging sale, he was sentenced to imprisonment for a term of not less than ten years nor more than ten years and one day, and on the indictment charging possession to a term of not less than two nor more than ten years, both sentences to run concurrently. He prosecutes this writ of error to review these convictions and sentences.

About 8:00 on August 27, 1960, detectives Lopez, Kienzle and Borkovich of the Chicago Police Department's Narcotics Section met Frank Gasca, an informer, at Central Police Headquarters. The serial numbers of $225 in currency were recorded, and the policemen and Gasca went

to the rear of the 2100 block of West Grenshaw Street in Chicago. Gasca drove his own car, Detective Lopez drove an unmarked police car, and detectives Kienzle and Borkovich were in a second unmarked police car. Gasca parked his car in the alley behind 2133 W. Grenshaw and Lopez parked just behind him. Kienzle and Borkovich parked at the entrance to the alley.

Detective Lopez testified that he saw the defendant approach Gasca's car, speak to Gasca, and then walk to a point approximately fifty feet down the alley. There he picked up a cardboard box and brought it to Lopez's car, where Gasca was standing. Lopez testified that the defendant then asked Lopez where he wanted the "stuff." Lopez looked in the box and saw that it contained crushed green plant in a plastic bag. He told the defendant to put the box in the trunk of his car and the defendant did so. Lopez testified that he then handed Gasca $225 out the window of the car and that Gasca immediately handed it to the defendant, who was standing next to him. The defendant and Gasca then got in Gasca's car, where the defendant was at once arrested. The money was found on his person. The crushed green plant was marijuana.

Lopez also testified that the defendant told the policemen that he had picked the marijuana in a field in Indiana where he had found it growing wild, that he had been bringing marijuana into the city for the five months preceding his arrest and that he had planned to bring in an additional twenty pounds the following week. When Lopez asked him whether he had any more marijuana, the defendant replied that he had some above the sun visor of his automobile. He told the officers the make and license number of his car and where it was parked, and gave them the car keys. They went to the car and found another package of marijuana above the sun visor. It was this package that formed the basis of the charge of unlawful possession.

Frank Gasca, the informer, was not called as a witness.

The defendant testified that on August 26, 1960, Gasca, whom he had known for five or six years, approached him and said that he had a friend to whom he was going to sell marijuana. "I told him I could get him some" and Gasca said he would bring the friend along the next day. On August 27, Gasca met the defendant in the alley behind defendant's residence at 2119 West Grenshaw at approximately 7:30 A.M., and said that he was going to pick up his friend and the money, and would return shortly. Detective Lopez accompanied Gasca on his return. The defendant's version of what then happened differs somewhat from that of Lopez. The defendant said that Gasca told him that he, Gasca, was the buyer and that it was Gasca who asked him to put the box in the trunk of Lopez's car. He also testified that Gasca did not hand him the money until they were sitting in Gasca's car, and that Lopez was not present at that time.

The defendant first urges that the record establishes, as a matter of law, the defense of entrapment. He points out that he was working steadily, had no previous narcotics record and was enticed into the commission of the crime by the offer of Frank Gasca, who had been his friend for five or six years, to pay a disproportionate price for the narcotics. But the defendant testified that when Gasca said that he had a prospective purchaser for marijuana, "I told him I could get him some." He did not need to seek a supplier. He testified that he had the marijuana himself; that he had picked it in Indiana and crushed it by rubbing across a window screen. There is nothing in the record that indicates that Gasca played upon his friendship with the defendant when he presented the opportunity to make a sale. Indeed there is some question as to how close that friendship was, since the defendant could not remember Gasca's last name when he testified. Nor is there any showing in the record that the price of $225 was inconsistent with the actual value of the marijuana. And although the defendant

had no prior criminal record, this factor alone can not overcome his own evidence of his ability and his instant willingness to make the unlawful sale as soon as the opportunity to do so was presented. Our conclusion is that he was not entrapped. See *People* v. *Wells,* 25 Ill.2d 146.

The defendant next contends that there was a material variance between the indictment, which charged a sale to Lopez, and the evidence which, he argues, established a sale to Gasca. The defendant's testimony shows that he knew that it was not Gasca, but Gasca's "friend," who wanted the marijuana, was paying for it, and was coming to get it. In the face of this testimony, his further statement that Gasca characterized himself as the buyer expresses no more than Gasca's conclusion as to the legal consequences of the transaction.

The defendant admits that he put the box that contained the marijuana in the trunk of Officer Lopez's car. Whether he did so at the direction of the officer or at the direction of the informer is disputed, and there is also a dispute as to the precise circumstances under which the defendant was paid. We need not here determine whether the defendant's testimony, if believed, is sufficient to establish that Gasca was an intermediate purchaser rather than an agent, for the trial court was not bound to reject the testimony of the officer and accept the testimony of the defendant. The circumstance that the defendant himself delivered the narcotics to the man that he knew was buying them and paying for them distinguishes this case from *People* v. *Sullivan,* 23 Ill.2d 582 and *People* v. *Wilson,* 24 Ill.2d 425.

The defendant also urges that the statute under which he was sentenced imposes a penalty disproportionate to the nature of the offense, and so violates section 11 of article II of the Illinois consistution. This point was not raised in the trial court and the People suggest that it was therefore waived. By its very nature, however, this objection could not have been raised until after the trial judge had made his

findings and entered judgment, and so it is properly before us for review. *People* v. *Stoyan,* 280 Ill. 300.

The statute provides that any person guilty of the unlawful sale of narcotics "shall be imprisoned in the penitentiary for any term from 10 years to life, and for any subsequent offense shall be imprisoned in the penitentiary for life. * * * No probation or suspension of sentence shall be granted to any violator convicted under this paragraph." (Ill. Rev. Stat. 1959, chap. 38, par. 192.28—38.) It is the mandatory minimum punishment of 10 years imprisonment for a first offender that the defendant attacks as unconstitutional.

This court has traditionally been reluctant to override the judgment of the General Assembly with respect to criminal penalties. It indicated at an early date that the constitutional command that "penalties shall be proportioned to the nature of the offense" would justify interference with the legislative judgment only if the punishment was "cruel," "degrading" or "so wholly disproportionate to the offense committed as to shock the moral sense of the community." (*People ex rel. Bradley* v. *Illinois State Reformatory,* 148 Ill. 413, 421.) With the exception of one case that involved the forfeiture of a railroad's franchise as a penalty for price discrimination, (*Chicago and Alton Railroad Co.* v. *People ex rel. Koerner* (1873), 67 Ill. 11,) an uninterrupted line of authority has sustained legislative judgments in this area. See, *e.g., People* v. *Elliott,* 272 Ill. 592; *People* v. *Landers,* 329 Ill. 453; *People* v. *Dixon,* 400 Ill. 449.

Even if we were to take into account the possibility of reduction of the period of imprisonment on the basis of "good time" and the operation of the parole laws, a mandatory sentence of imprisonment for a minimum of 10 years would still be a severe penalty for a first offense involving the sale of marijuana. On the other hand, the seriousness of the traffic in narcotics is apparent from the number of narcotics cases in this court, without considering more comprehensive statistics. It may be that there are more

effective techniques for the control and elimination of the narcotics traffic than a solution that takes the form of penalties of increasing severity. (See, Drug Addiction: Crime or Disease? Report of A.B.A.-A.M.A. Joint Committee on Narcotic Drugs.) Nevertheless, having in mind the deadly toll that is exacted by the narcotics traffic, we can not say that the penalty fixed in this case is "disproportionate to the nature of the offense."

Other contentions are raised by the defendant, but they are not borne out by the record. The judgment of the criminal court of Cook County is affirmed.

*Judgment affirmed.*