(Nos. 72034, 72035, 72036 cons.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. BRIAN KEITH HAMM, Appellee.—THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. ROBERT A. SWAN, Appellee.—THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. ARNOLD W. DeVORE, Appellee.

*Opinion filed June 9, 1992.*

202

Roland W. Burris, Attorney General, of Springfield (Rosalyn Kaplan, Solicitor General, and Terence M. Madsen and Nathan P. Maddox, Assistant Attorneys General, of counsel), for the People.

Daniel D. Yuhas, Deputy Defender, and Jeffrey D. Foust, Assistant Defender, of the Office of the State Appellate Defender, of Springfield, for appellees.

JUSTICE CUNNINGHAM delivered the opinion of the court:

This is a direct appeal (134 Ill. 2d R. 302(a)) from the circuit court of Schuyler County declaring unconstitutional section 2.4(a) of the Fish Code of 1971, as amended (Code) (Ill. Rev. Stat. 1989, ch. 56, par. 2.4(a)). The three cases involved, People v. Hamm, No. 72034, People v. Swan, No. 72035, and People v. DeVore, No. 72036, were consolidated on August 19, 1991, pursuant to the State's motion.

The State filed amended complaints against the defendants on May 4, 1989, charging each with two felony counts of violating section 2.4(a) of the Code. Section 2.4(a) of the Code provides in part:

> "Any person who, for profit or commercial purposes, knowingly captures or kills, [or] possesses, *** any of the species protected by this Act, contrary to the provisions of the Act, and such aquatic life, in whole or in part, are valued in excess of a total of $300, as per specie value specified in subsection (c) of this Section, commits a Class 3 felony." (Ill. Rev. Stat. 1989, ch. 56, par. 2.4(a).)

The charges against all three defendants alleged that on March 3, 1989, each defendant knowingly possessed (count I) and captured or killed (count II) aquatic life of species protected by the Code having a value in excess of $300, for commercial purposes, contrary to the provisions of the Code. The specific provisions of the Code defendants were charged with violating for the purposes of section 2.4(a) are: (1) section 1.5 (Ill. Rev. Stat. 1989, ch. 56, par. 1.5; 17 Ill. Adm. Code §830.40(b)(2) (1991)), use of a commercial fishing device, a seine, in restricted

waters; (2) section 2.2(b) (Ill. Rev. Stat. 1989, ch. 56, par. 2.2(b)), taking aquatic life within waters other than public waters of the State without obtaining consent of the owner or occupant of the premises; (3) section 4.22 (Ill. Rev. Stat. 1989, ch. 56, par. 4.22), illegal length and mesh size of seine; and (4) section 5.20 (Ill. Rev. Stat. 1989, ch. 56, par. 5.20), failure to have commercial fishing licenses in their possession for immediate presentation for inspection to authorized personnel. Defendant Swan's information further alleged that he violated section 5.11 of the Code (Ill. Rev. Stat. 1989, ch. 56, par. 5.11) in failing to have his seine properly tagged.

On April 10, 1991, defendants filed motions to dismiss the felony counts and argued the Code: (1) is impermissibly vague; (2) denies equal protection of the law; (3) provides a penalty disproportionate to the crimes enumerated or the acts the legislature intended to curtail; and (4) provides a dollar amount value for species of fish that have no relevance to market or ethical value as a wild species. The motion to dismiss was heard on May 1, 1991. After hearing arguments from defense counsel and the State's Attorney, the trial court ruled from the bench that the Code was not constitutionally vague. However, the trial court did find that the Code violated equal protection because it treats a person fishing for profit or commercially fishing differently than a person fishing for his own use. The court also found the Code unconstitutional because it ascribes a value to the fish when there is an objective form for determining value, market value.

The trial court also entered the following written order on May 1, 1991:

"Arguments heard on Defendant's challenge to the felony charges only, on constitutional grounds. Court rules statute violates equal protection of law and is additionally unconstitutional because value is a critical aspect of the law and the legislature cannot proscribe [sic] a

value to an item which has a market value readily available.

Accordingly, it is ordered that the felony charges against the Defendants are dismissed and the remaining cases shall proceed [to] trial to be set by agreement at a later date."

The State filed notice of appeal and the cause was transferred to this court pursuant to our Rule 302(a) (134 Ill. 2d R. 302(a)). Five issues are presented for review, the first two of which have been briefed by both the State and defendants: (1) whether section 2.4 of the Code violates defendants' right to equal protection under the Illinois Constitution of 1970 and the United States Constitution; and (2) whether section 2.4(c) of the Code, which ascribes a value to certain species of fish, renders section 2.4 unconstitutional. Three additional issues are advanced by defendants but not addressed by the State: (1) whether section 2.4(a) of the Code violates due process in that the penalty provided does not bear a rational relationship to a legitimate legislative interest; (2) whether the penalty provision in section 2.4(a) of the Code violates the proportionate penalties provision of the Illinois Constitution; and (3) whether the Code violates due process as being unconstitutionally vague.

We first address the argument that section 2.4 of the Code violates the equal protection clauses of the Illinois and United States Constitutions (U.S. Const., amend. XIV; Ill. Const. 1970, art. I, §2). The trial court did not indicate which constitution section 2.4 violated. Our analysis of the issue will apply to both the United States and Illinois Constitutions.

We begin our analysis with the presumption that all statutes are constitutional. (*People v. Bales* (1985), 108 Ill. 2d 182, 192-93.) Because of this presumption, the party challenging the statute in question has the burden of clearly establishing the alleged constitutional viola-

tions. (*Bales*, 108 Ill. 2d at 188.) "It is our duty to construe acts of the legislature so as to affirm their constitutionality and validity, if it can reasonably be done, and further if their construction is doubtful, the doubt will be decided in favor of the validity of the law challenged. [Citation.]" *Continental Illinois National Bank & Trust Co. v. Illinois State Toll Highway Comm'n* (1969), 42 Ill. 2d 385, 389.

The equal protection clauses of the United States and Illinois Constitutions do not deny the States the power to treat different classes of persons in different ways. (*Eisenstadt v. Baird* (1972), 405 U.S. 438, 446-47, 31 L. Ed. 2d 349, 358, 92 S. Ct. 1029, 1035; *People v. Coleman* (1986), 111 Ill. 2d 87, 95.) However, a rational basis must exist for distinguishing the class to which the law applies from the class to which the statute is inapplicable. (*People v. McCabe* (1971), 49 Ill. 2d 338, 341.) As the Supreme Court stated in *Rinaldi v. Yeager* (1966), 384 U.S. 305, 308-09, 16 L. Ed. 2d 577, 580, 86 S. Ct. 1497, 1499-1500:

> "The Equal Protection Clause *** imposes a requirement of some rationality in the nature of the class singled out. To be sure, the constitutional demand is not a demand that a statute necessarily apply equally to all persons. 'The Constitution does not require things which are different in fact ... to be treated in law as though they were the same.' *Tigner v. Texas*, 310 U.S. 141, 147. Hence, legislation may impose special burdens upon defined classes in order to achieve permissible ends. But the Equal Protection Clause does require that, in defining a class subject to legislation, the distinctions that are drawn have 'some relevance to the purpose for which the classification is made.' [Citations.]"

Section 2.4(a) of the Code provides a Class 3 felony for any person who knowingly captures, kills, or possesses aquatic life, valued over $300, in violation of any provision of the Code, when done for profit or commer-

cial purposes. Defendants argue, and the trial court agreed, that section 2.4(a) violates equal protection because any person, such as a sport fisherman, who commits the same act, knowingly killing or possessing aquatic life valued over $300 in violation of any provision of the Code, but not for profit or commercial purposes, is guilty only of a misdemeanor. (Ill. Rev. Stat. 1989, ch. 56, par. 5.7.) Defendants believe that section 2.4(a) " 'lays an unequal hand on those who have committed intrinsically the same quality of offense.' " (*People v. Bradley* (1980), 79 Ill. 2d 410, 416, quoting *Skinner v. Oklahoma* (1942), 316 U.S. 535, 541, 86 L. Ed. 1655, 1660, 62 S. Ct. 1110, 1113.) That is to say, defendants argue there is no rational basis for punishing a commercial fisherman as a Class 3 felon for engaging in illegal fishing practices when a sport fisherman engaging in the same conduct is punished as a misdemeanant. We find however, a rational basis for such distinction: the monetary incentive in commercial fishing and fishing for profit, and the capability of commercial fishermen to remove large amounts of fish from Illinois waters.

In finding this rational basis, we note that this court addressed a similar issue in *Chicago Real Estate Board v. City of Chicago* (1967), 36 Ill. 2d 530. The issue involved there was whether the Chicago Fair Housing Ordinance violated the equal protection clause of the United States Constitution for prohibiting real estate brokers, but not individuals selling their own homes, from engaging in certain types of conduct. While *Chicago Real Estate Board* dealt with the equal protection clause of the United States Constitution, we find the analysis there applicable to our own equal protection clause as well.

In discussing equal protection of the law in *Chicago Real Estate Board*, this court cited with approval Justice Holmes' clear explanation of the concept:

" '[W]e start with the general consideration that a state may classify with reference to the evil to be prevented, and that if the class discriminated against is or reasonably might be considered to define those from whom the evil mainly is to be feared, it properly may be picked out. *** The demand for symmetry ignores the specific difference that experience is supposed to have shown to mark the class. *It is not enough to invalidate the law that others may do the same thing and go unpunished if, as a matter of fact, it is found that the danger is characteristic of the class named.* [Citation.] The state "may direct its law against what it deems the evil as it actually exists without covering the whole field of possible abuse." ' (Emphasis supplied.)" (*Chicago Real Estate Board*, 36 Ill. 2d at 543-44, quoting *Patsone v. Pennsylvania* (1914), 232 U.S. 138, 144, 58 L. Ed. 539, 543-44, 34 S. Ct. 281, 282.)

This court also noted in *Chicago Real Estate Board* that where a law involves reform " 'it may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind.' *Williamson v. Lee Optical of Oklahoma, Inc.*, 348 U.S. 483, 489; *Morey v. Doud*, 354 U.S. 457, 465, 1 L. Ed. 2d 1485." (*Chicago Real Estate Board*, 36 Ill. 2d at 545.) Moreover, "a classification may be reasonably made between those who engage in a harmful practice on their own behalf, and those who pursue such conduct *for hire*, in view of the nature and extent of their operations." (Emphasis added.) (*Chicago Real Estate Board*, 36 Ill. 2d at 550, citing *Railway Express Agency, Inc. v. New York* (1949), 336 U.S. 106, 110, 93 L. Ed. 533, 539, 69 S. Ct. 463, 465.) This court concluded in *Chicago Real Estate Board* that the statute involved did not violate equal protection and noted that "by the nature of their work, real-estate brokers engage in far more transactions of buying, selling, renting, and financing of property, and consequently have far more opportunity to exercise discrimination and affect the housing market than do individual property

owners." *Chicago Real Estate Board*, 36 Ill. 2d at 549-50.

The same is true here, as those who fish commercially and for profit have a stronger motive, monetary gain, than a sport fisherman to illegally take as many fish as possible. Additionally, commercial fishermen have the means available to take a far greater amount of fish and thus affect the waters of Illinois greater than sport fishermen. Thus, the legislature reasonably decided to attack the problem it deemed most acute, commercial fishing and fishing for profit in violation of the Code, when it provided the Class 3 felony found in section 2.4(a). While defendants argue that this rationale rests upon the assumption that commercial fishermen damage the State's resources, we disagree. Instead, this rationale only recognizes the fact that fishing for profit and commercial fishing, when done contrary to the provisions of the Code, more severely threaten the State's natural resources than sport fishing in violation of the Code.

Defendants also argue here that section 2.4(a) violates equal protection because the fish involved, mostly carp and buffalo, are "rough fish" or "trash fish" and that the State has made an effort to rid rivers and lakes of such fish. Defendants argue that at the hearing on the motion to dismiss, defense counsel "averred" that the State often requests commercial fishermen to harvest in some of the very same areas defendants were operating when charged with the current felonies. Defendants conclude that there is no rational basis in treating commercial fishermen differently from sport fishermen with regard to the fish at issue, given the minimal conservation ends served by the proscriptions against harvesting "trash" fish.

We are unable to address this argument on the record presented. Defendants introduced no evidence in the pro-

ceedings below other than oral arguments of the attorney, and have not cited any authority on appeal, to support the contention that the fish involved are "rough fish" which the State wishes to eradicate. Moreover, defendants do not ask this court to take judicial notice of any facts and we decline to do so on our own. We conclude that section 2.4(a) of the Code does not violate equal protection under either the United States or Illinois Constitutions.

The second issue on appeal is whether the statutory provision of the Code which ascribes monetary values to certain species of fish renders section 2.4 unconstitutional. Section 2.4(c) of the Code ascribes, for the purposes of section 2.4, monetary values to certain aquatic life. (Ill. Rev. Stat. 1989, ch. 56, par. 2.4(c).) This valuation is provided to determine whether the $300 provision in section 2.4(a), or the $600 provision in section 2.4(b) (Ill. Rev. Stat. 1989, ch. 56, par. 2.4(b) (*prima facie* evidence of commercial fishing)), are met. The price given in section 2.4(c) for the type of fish involved in this case is one dollar a pound, in whole or part. Defendants argue, and the trial court ruled, that the valuation of fish provided in section 2.4(c) is unconstitutional because a market for such fish exists, and the market price is readily ascertainable. The market price for the type of fish involved, defendants argue, is much lower than the one dollar a pound at which the fish are valued in section 2.4(c). While the trial court did not state what constitutional provisions section 2.4(c) violates, defendants argue that the provision violates the due process clauses of the United States and Illinois Constitutions because the valuation in section 2.4(c) of the fish involved, a dollar a pound, is well above market price and thus arbitrary. U.S. Const., amend. XIV; Ill. Const. 1970, art. I, §2.

We need not address the issue of whether section 2.4(c) of the Code is unconstitutional, however, because we con-

clude that defendants lack standing to challenge its validity. A fundamental rule of constitutional law is that a court will not determine the constitutionality of a provision of a statute which does not affect the parties to the cause under consideration. (*People v. Rogers* (1989), 133 Ill. 2d 1, 8.) Thus, a party may challenge the constitutionality of a statutory provision only if that party has sustained or is in immediate danger of sustaining some direct injury as a result of its enforcement. (*People v. Esposito* (1988), 121 Ill. 2d 491, 512.) In this case, defendants cannot show they will be harmed by the valuation ascribed by section 2.4(c) because the record reveals that a small portion of the fish defendants caught, those which could not be placed alive back into the water, was sold at a fish market for $700. The majority of the fish taken by defendants were released back into the water. Defendants even conceded in their motion to dismiss the charges that "in fact, the dollar amount received from a commercial fish buyer exceeded six hundred dollars." Thus, while defendants argue that the valuation in section 2.4(c) is arbitrary and unconstitutional because the fish should be valued by their market price, which is much less than a dollar per pound, a small portion of the fish taken by defendants was in fact sold at market for well over the $300 required for a Class 3 felony in section 2.4(a). Defendants were thus not aggrieved by the valuation provided in section 2.4(c).

In *City of Chicago v. Lawrence* (1969), 42 Ill. 2d 461, the defendants, who were charged with interfering with a police officer in the performance of his duties, argued on appeal that the ordinance was unconstitutional in that it did not require the offense to be "knowingly" committed. On appeal, this court refused to decide the issue because the defendants lacked standing to raise such:

"Even if a construction could be given which would render it void because of such an absence, defendants are in no position to raise the question. It is an established rule that

courts will not entertain objections to an allegedly unconstitutional feature where the objecting party is not in any way aggrieved thereby. *** In the case at bar there was nothing inadvertent or unknowing about defendants' interference. It is clear that they acted with full scienter, the officer having in fact advised them of his assignment when he first spoke to them. *** They are not in a position to raise a constitutional question based on lack of scienter." (*City of Chicago*, 42 Ill. 2d at 464-65.)

The same is true in the instant case, as defendants are not aggrieved by the valuation in section 2.4(c). Defendants therefore lack standing to challenge the validity of section 2.4(c) of the Code.

The next three issues on appeal were raised by defendants in their brief but have not been addressed by the State, which has chosen not to file a reply brief. While defendants did not file a cross-appeal to raise these issues, they need not, and cannot, as specific findings of the trial court adverse to an appellee do not require a cross-appeal as long as the judgment was entirely in favor of the appellee. (*Material Service Corp. v. Department of Revenue* (1983), 98 Ill. 2d 382, 386-87; see also *People v. Bradford* (1939), 372 Ill. 63.) The judgment at the trial court was entirely in defendants' favor, as they received all they asked for, the dismissal of the felony counts. (*Material Service Corp.*, 98 Ill. 2d at 386-87.) Moreover, an appellee may argue any matter to sustain a judgment as long as it is supported by the record. *Estate of Johnson v. Condell Memorial Hospital* (1988), 119 Ill. 2d 496, 502.

Defendants first argue that section 2.4(a) is unconstitutional because it violates the due process clauses of the United States and Illinois Constitutions (U.S. Const., amend. XIV; Ill. Const. 1970, art. I, §2). Defendants believe the penalty provision of section 2.4(a) is not reasonably related to a legitimate State interest. As with an equal protection challenge, the presumption in a due process at-

tack is that the statute in question is valid and the burden of showing the invalidity of the statute is on the defendants. (*Bales*, 108 Ill. 2d at 188.) Because the statute in question does not involve a fundamental right, the test to be used in a due process analysis is the rational basis test. (*Lindsey v. Normet* (1972), 405 U.S. 56, 73-74, 31 L. Ed. 2d 36, 50-51, 92 S. Ct. 862, 874; *Harris v. Manor Health-care Corp.* (1986), 111 Ill. 2d 350, 368.) Thus, section 2.4 of the Code will be upheld if it bears a rational relation to a legitimate legislative purpose and is neither arbitrary nor discriminatory. (*Harris*, 111 Ill. 2d at 368.) If there is any conceivable basis for finding a rational relationship, the law will be upheld. *McGowan v. Maryland* (1961), 366 U.S. 420, 426, 6 L. Ed. 2d 393, 399, 81 S. Ct. 1101, 1105; *Harris*, 111 Ill. 2d at 368.

Defendants first note that the legislative debates reveal that the purpose of section 2.4 was to help prevent the widespread poaching of wildlife. Defendants then repeat their earlier argument that the type of fish they caught are generally considered a nuisance and nonbeneficial to the life of lakes and rivers and conclude that no rational basis exists to provide a felony penalty for the crimes charged. As noted above, however, defendants failed to introduce any evidence regarding this argument, and have not asked this court to judicially notice any facts. Again, we decline to take judicial notice of any facts and thus do not address this argument.

Defendants also argue here that the penalty provision of section 2.4(a) violates due process in regard to minor violations of the Code which can be elevated from misdemeanors to Class 3 felonies when the additional facts of commercially fishing and taking more than $300 worth of fish are present. Defendants correctly believe that because section 2.4(a) does not specify which particular violation of the Code would elevate an otherwise misdemeanor to a Class 3 felony, it must be assumed that any violation of the

Code would provide the underlying violation for section 2.4. Defendants note several violations they consider minor and argue it would be a violation of due process to have these minor violations elevated to Class 3 felonies because they were involved in commercial fishing and caught over $300 worth of fish, a legal activity. We need address only two of the examples cited by defendants, violations of sections 5.11 and 5.20, because those are the only two examples defendants cite with which they were actually charged. The other examples defendants consider minor were not charged in the instant case and defendants thus lack standing to challenge them, as they are not in any danger of sustaining a direct injury as a result of enforcement of the provisions. *Esposito*, 121 Ill. 2d at 515-16.

Section 5.11 of the Code provides that each licensee of a fishing device, such as a seine, shall receive a tag from the Department and that such tag shall be attached to the seine. The purpose of this tag is to provide evidence on the fishing device that it is licensed. A separate section, 5.8, contains the requirement that commercial fishing devices be licensed. Section 5.20 requires any person fishing to have, in his possession, his license for immediate inspection. Again, a separate section, 5.8, contains the requirement that commercial fishermen be licensed. Defendants were not charged with any violation of section 5.8, that is, that they or their equipment were not licensed. Instead, the charges under section 5.11 and 5.20 only allege that defendants failed to have evidence in their immediate possession to prove that they were properly licensed, and that Swan failed to have the proper evidence attached to the seine to prove that it was properly licensed.

We agree with defendants that a felony conviction for a violation of these two sections, when the additional facts of commercially fishing and taking over $300 worth of fish are present, would amount to a violation of due process. The purpose of section 2.4 of the Code is to prevent the

illegal widespread destruction of natural resources, in this case, the illegal taking of great amounts of fish from Illinois waters. To accomplish this, the legislature provided that any knowing violation of the Code, when accompanied by the requisites of fishing commercially or for profit, and taking over $300 worth of fish, would be elevated from a misdemeanor to a Class 3 felony. In doing so, the legislature clearly meant to punish and inhibit those actions which assist or result in the illegal widespread destruction of natural resources. We do not believe that having a tag on a net evincing that the net is licensed, or a license in one's immediate possession while fishing as proof that the individual was licensed, assists or results in the illegal widespread destruction of the State's resources. The other charges alleged against defendants, however, clearly do: using a seine of illegal length and mesh size; fishing in nonpublic waters without the owner's permission; and using commercial fishing devices in restricted waters.

We conclude that a Class 3 felony for a person otherwise legally commercially fishing and taking over $300 worth of fish, but who fails to have a tag on his net as proof that the net is licensed, or fails to have in his immediate possession his fishing license to prove he is licensed, is not reasonably designed to protect the citizens of Illinois from depleting our natural resources. Such a penalty violates the due process clause of the Illinois Constitution and cannot stand. (See *People v. Morris* (1990), 136 Ill. 2d 157, 162.) Because we decide that an enhancement from a misdemeanor to a Class 3 felony for these two minor violations under section 2.4(a) would amount to a due process violation under the Illinois Constitution, we need not decide whether the same would violate the due process clause of the United States Constitution.

Defendants next argue, and we agree, that a Class 3 felony for these minor violations would also violate the guarantee of proportionate penalties in our constitution.

Article I, section 11, of the Illinois Constitution provides in pertinent part: "All penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." (Ill. Const. 1970, art. I, §11.) Section 11 requires "the legislature, in defining crimes and their penalties, to consider the constitutional goals of restoring an offender to useful citizenship and of providing a penalty according to the seriousness of the offense." *People v. Taylor* (1984), 102 Ill. 2d 201, 206.

Initially, we note that this court is "reluctant to override the judgment of the General Assembly with respect to criminal penalties." (*People v. Gonzales* (1962), 25 Ill. 2d 235, 240.) Moreover, a penalty will be deemed disproportionate only when the penalty was " 'cruel,' 'degrading' or 'so wholly disproportionate to the offense committed as to shock the moral sense of the community.' " (*Gonzales*, 25 Ill. 2d at 240, quoting *People ex rel. Bradley v. Illinois State Reformatory* (1894), 148 Ill. 413, 421-22; see also *People v. Morris* (1990), 136 Ill. 2d 157.) However, in the instant case, we find that a Class 3 felony for violations of sections 5.11 and 5.20 of the Code, when the additional facts of legally commercially fishing and taking more than $300 worth of fish are present, violates the proportionate penalty provision of the Illinois Constitution.

In finding such, we note similar violations found in the Illinois Vehicle Code involving possession of proof of licensing and insurance are deemed minor violations and will likely result in no penalty whatsoever. Section 6—112 of the Illinois Vehicle Code (Ill. Rev. Stat. 1989, ch. 95½, par. 6—112) provides that every licensee shall have in his immediate possession his drivers license at all times while operating a motor vehicle, and must display the license to any law enforcement personnel. However, section 6—112 also provides that no person shall be convicted of this violation if the person produces a valid drivers license in

court that was valid at the time of the arrest. Another example of this type of violation is contained in sections 3—707 and 7—602 of the Vehicle Code, which provide that any person who fails to comply with a request from a law enforcement officer for display of evidence of automobile insurance shall be deemed to be operating an uninsured motor vehicle, a business offense. (Ill. Rev. Stat. 1989, ch. 95½, pars. 3—707, 7—602.) However, no person shall be convicted of this offense if that person produces in court evidence that the motor vehicle was insured at the time of the arrest. Similar violations found in section 5.8 and 5.20 of the Code, however, would result in a Class 3 felony conviction under the circumstances here, legally commercially fishing and taking over $300 worth of fish.

We conclude that violations of section 5.11 and 5.20 may not provide the underlying violations of section 2.4(a) to provide a Class 3 felony. We note, however, that this decision in no way affects the State's ability to prosecute the violations as misdemeanors under the Code. This decision also does not affect in any way the State's prosecution of defendants under section 2.4(a) of the Code using the other violations of the Code charged.

Defendants' final argument is that section 2.4 of the Code violates due process because it is unconstitutionally vague. Defendants argument is as follows. Section 2.4 of the Code is unconstitutionally vague because the section does not specify which violation of the Code may be elevated to Class 3 felonies. It must therefore be assumed that every violation of the Code may be elevated to a Class 3 felony under section 2.4(a). However, there are many minor violations which the legislature could not have possibly intended to be elevated to Class 3 felonies. Thus, defendants conclude, the statute is unconstitutionally vague because it is unknown which minor violations of the Code can be used, or will be charged, to supply section 2.4(a) with the requisite violation for a Class 3 felony.

To survive a due process vagueness challenge, "the statute must give a person of ordinary intelligence a reasonable opportunity to know what conduct is lawful and what conduct is unlawful." (*Bales*, 108 Ill. 2d at 188.) The statute must also provide standards "so as to avoid arbitrary and discriminatory enforcement and application by police officers, judges, and juries." (*Bales*, 108 Ill. 2d at 188.) However, "[t]he determination of whether a statute is void for vagueness must be made in the factual context of each case." (*Bales*, 108 Ill. 2d at 189.) And, a defendant "may be prosecuted under a statute without violating his due process rights if his conduct clearly falls within the statutory proscription even though the statute may be vague as to other conduct." (*People v. Garrison* (1980), 82 Ill. 2d 444, 454.) While we do not believe the Code is vague, we note that the conduct with which defendants were charged clearly falls within the statutory proscription. Defendants do not argue otherwise. Thus, defendants' void for vagueness argument must fail.

For the foregoing reasons, the judgments of the circuit court are affirmed in part and reversed in part. The causes are remanded to the circuit court for further proceedings.

*Judgments affirmed in part*
*and reversed in part;*
*causes remanded.*