THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RUFUS McGEE, Defendant-Appellant.

First District (5th Division)   No. 1—92—3413

Opinion filed December 23, 1993.

Frederick F. Cohn, of Chicago (Steven Pick, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Susan Schierl, and Leslie German, Assistant State's Attorneys, of counsel), for the People.

JUSTICE MURRAY delivered the opinion of court:

On November 1, 1991, defendant, Rufus McGee, was stopped by a Chicago police officer for a traffic violation. The defendant produced a driver's license which proved to be fraudulent. Defendant was placed under arrest for possession of a fraudulent driver's license.

Prior to trial, defendant filed a motion to dismiss the charges, alleging section 6—301.2 of the Illinois Vehicle Code (Ill. Rev. Stat. 1991, ch. 95$^1$/$_2$, par. 6—301.2) was unconstitutional. The trial court denied the defendant's motion to dismiss. The case proceeded to a stipulated bench trial where defendant was found guilty of the offense of possession of a fraudulent driver's license. Defendant was sentenced to one-year felony probation and fined $600.

The sole issue presented for review is whether the penalty provision of the fraudulent driver's license statute is unconstitutional. (See Ill. Rev. Stat. 1991, ch. 95$^1$/$_2$, par. 6—301.2(c)(1).) Section 6—301.2 of the Illinois Vehicle Code provides in pertinent part:

"Fraudulent driver's license or permit.

\* \* \*

(b) It is a violation of this Section for any person:

1. *To knowingly possess any fraudulent driver's license or permit*;

2. To knowingly possess, display or cause to be displayed any

fraudulent driver's license or permit for the purpose of obtaining any account, credit, credit card or debit card from a bank, financial institution or retail mercantile establishment;

3. To knowingly possess any fraudulent driver's license or permit with the intent to commit a theft, deception or credit or debit card fraud in violation of any law of this State or any law of any other jurisdiction;

4. To knowingly possess any fraudulent driver's license or permit with the intent to commit any other violation of any laws of this State or any law of any other jurisdiction for which a sentence to a term of imprisonment in a penitentiary for one year or more is provided;

5. To knowingly possess any fraudulent driver's license or permit while in unauthorized possession of any document, instrument or device capable of defrauding another;

6. To knowingly possess any fraudulent driver's license or permit with the intent to use the license or permit to acquire any other identification document;

7. To knowingly possess without authority any driver's license making implement;

8. To knowingly possess any stolen driver's license making implement;

9. To knowingly duplicate, manufacture, sell or transfer any fraudulent driver's license or permit;

10. To *advertise or distribute* a fraudulent driver's license or permit.

(c) Sentence.

1. Any person convicted of a violation of paragraph 1 of subsection (b) of this Section shall be guilty of a *Class 4 felony*.

2. Any person convicted of a violation of any of paragraphs 2 through 9 of subsection (b) of this Section shall be guilty of a Class 4 felony. A person convicted of a second or subsequent violation shall be guilty of a Class 3 felony.

3. Any person convicted of a violation of paragraph 10 of subsection (b) of this Section shall be guilty of a *Class B misdemeanor*." (Emphasis added.) Ill. Rev. Stat. 1991, ch. 95¹/₂, par. 6—301.2.

A reading of the statute discloses that the violation of the provision relating to knowingly possessing a fraudulent driver's license is a Class 4 felony while the distribution of a fraudulent driver's license is only a Class B misdemeanor. McGee claims this difference in classification is irrational and violates the prohibition against equal protection of the law and due process in both the State and Federal Constitutions.

Article I, section 2, of the Illinois Constitution provides, in pertinent part: "No person shall be deprived of life, liberty or property without due process of law ***." (Ill. Const. 1970, art. I, § 2.) Article I, section 11, of the Constitution provides in pertinent part: "All penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." (Ill. Const. 1970, art. I, § 11.) "The policy underlying these constitutional provisions would be violated if the penalty prescribed for an offense is not as great or greater than the penalty prescribed for a less serious offense." *People v. Wisslead* (1983), 94 Ill. 2d 190, 196, 446 N.E.2d 512, 514; see also *People v. Bradley* (1980), 79 Ill. 2d 410, 403 N.E.2d 1029.

In construing statutes, the courts presume that the General Assembly, in passing the legislation, did not intend absurdity, inconvenience, or injustice. (*People v. Steppan* (1985), 105 Ill. 2d 310, 316, 473 N.E.2d 1300, 1303.) When analyzing a statute, a court must begin with the presumption that the statute is constitutional. (*People v. Bales* (1985), 108 Ill. 2d 182, 192-93, 483 N.E.2d 517.) Under the State's police power, the legislature has wide discretion to prescribe penalties for defined offenses. (*People v. Upton* (1986), 114 Ill. 2d 362, 373, 500 N.E.2d 943, 948.) Such legislation will not be invalidated "unless the challenged penalty is clearly in excess of the very broad and general constitutional limitations applicable." (*People ex rel. Carey v. Bentivenga* (1981), 83 Ill. 2d 537, 542, 416 N.E.2d 259, 262.) Even the legislature's power to fix penalties is subject to the constitutional proscription which prohibits the deprivation of liberty without due process of law. (*People v. Bradley* (1980), 79 Ill. 2d 410, 417, 403 N.E.2d 1029.) "To be a valid exercise of police power, the legislation must bear a reasonable relationship to [the interest] which is sought to be protected, and the means adopted must constitute a reasonable method to accomplish such objective." (*City of Carbondale v. Brewster* (1979), 78 Ill. 2d 111, 115, 398 N.E.2d 829, 831.) The determination of reasonableness is a matter for the courts. *Carbondale*, 78 Ill. 2d at 115, 398 N.E.2d at 831.

McGee argues he was in possession of his own fraudulent driver's license and that the penalty he was given for possession is greater than that which could be imposed, for the greater offense of distribution, upon one who "gave, or distributed, the fraudulent driver's license." Defendant argues that "[t]his result is not rational, because the lesser included offense, the less serious offense, is the possession of a fraudulent driver's license. Therefore, the statute violates due process."

The State maintains that the statute is constitutional since the

penalty provision is reasonably designed to remedy the evil which the legislature obviously determined was the greater threat to the public. The State argues that the fact that the statute provides a greater punishment for possession of a fraudulent driver's license than for distribution is irrelevant for equal protection purposes because one cannot claim that a defendant convicted of possession is similarly situated to one convicted of distribution. The State argues that since all defendants convicted of possession are treated similarly and all defendants convicted of distribution are treated similarly, section 6—301.2 does not violate the equal protection clause.

The State further argues that the trial court determined that the primary purpose of the statute was to insure that people who drive on the highways of Illinois are qualified to do so; thus, it is a public safety measure. The trial court then determined that the harm the legislature was seeking to address is the fact that a person merely possessing a fraudulent driver's license might possess it when operating a car to show that he is licensed when in fact he is not and in this manner, the possessor of a fraudulent driver's license could subvert the entire mechanism in place to ensure the safety of all citizens using the roadways in Illinois. Thus, the trial court determined that the possession of a fraudulent driver's license endangers the safety of the public in this type of case and so viewed, the delivery of a fraudulent driver's license does not necessarily entail the type of direct public harm as does the possession. The State argues that, thus, the delivery of a fraudulent driver's license could, therefore, be reasonably viewed as a less serious crime than the knowing possession of a fraudulent driver's license. That reasoning is as logical as the Riflemen's Association's claim that guns don't kill, people do.

The legislative intent is best derived from consideration of the statute's language which, at times, affords the best means of its exposition; the words used in a statute are assumed to have been intended to retain their ordinary and popularly understood meaning. (*In re Application of People ex rel. Walgenbach* (1983), 117 Ill. App. 3d 14, 452 N.E.2d 760.) The State fails to note that prior to making the above findings, the trial judge stated, "I could not find anything that indicated why they passed the statute; so *** this is *** why I think the legislature passed the statute." Thus, the trial judge was merely expressing his own feelings as to why he thought the legislature might have passed the statute. In addition, the trial judge's interpretation of the applicable statute fails to note that the statute mentions nothing about driving with a fraudulent driver's license. The statute prohibits the mere possession of such a license.

The State further argues that implicit in defendant's argument is the mistaken premise that knowing possession of a fraudulent driver's license is legally a "lesser included offense" of advertising or distribution of a fraudulent driver's license. Defendant contends that because one must possess a fraudulent driver's license in order to distribute it, possession is rendered a lesser included offense of distribution.

In *People v. Bryant* (1989), 128 Ill. 2d 448, 457-58, 539 N.E.2d 1221, defendant was convicted of possession of a stolen motor vehicle, a Class 2 felony. Defendant appealed his conviction claiming that that section of the Illinois Vehicle Code violated the due process and proportionate penalty clauses of the Illinois Constitution. Defendant argued that the present classification violated the due process and proportionate penalties clauses of the Illinois Constitution because it made possession of a stolen motor vehicle a Class 2 felony (Ill. Rev. Stat. 1985, ch. 95$\frac{1}{2}$, par. 4—103(b)) punishable by three to seven years' imprisonment, while the greater offense of theft (Ill. Rev. Stat. 1985, ch. 38, par. 16—1) was a Class 3 felony punishable by two to five years' imprisonment. The history of the possession of a stolen motor vehicle penalty provision indicates a steady increase in the penalty provision. The court held this to be indicative of the legislature's intent to make possession of a stolen motor vehicle a separate, more serious offense than theft, rather than a lesser included offense of theft. We note the statutes at issue in *Bryant* were the general theft statute and a paragraph of the Illinois Vehicle Code, as opposed to this case where the provisions at issue involve paragraphs within the same section of the Illinois Vehicle Code.

Effective August 30, 1979, the Illinois Vehicle Code provided:

"§ 6—301. *** It is a Class C misdemeanor for any person:

1. To display or cause or permit to be displayed or have in his possession any cancelled, revoked, suspended, fictitious, or fraudulently altered license or permit[.]

* * *

§ 6—301.1. *** It is a Class B misdemeanor for any person:

To duplicate, manufacture, or sell any document which purports to be an official drivers license or permit which is not issued by the Secretary or other official drivers license agency in another jurisdiction." (Ill. Rev. Stat. 1981, ch. 95$\frac{1}{2}$, pars. 6—301, 6—301.1.)

The current version of section 6—301.2 was made effective September 1, 1989. See Ill. Rev. Stat. 1991, ch. 95$\frac{1}{2}$, par. 6—301.2.

In *People v. Natoli* (1979), 70 Ill. App. 3d 131, 387 N.E.2d 1096, section 402(b) of the Controlled Substance Act (CSA) was declared a nullity. Section 402(b) of the CSA stated that unlawful possession of a

schedule IV controlled substance was a Class 3 felony. Section 401(e) stated that unlawful delivery of a schedule IV controlled substance was a Class 4 felony. The *Natoli* court reasoned that possession was a lesser offense than delivery, and that a higher penalty for possession than for delivery was therefore irrational.

In *People v. Bradley* (1980), 79 Ill. 2d 410, 403 N.E.2d 1029, the Illinois Supreme Court held that the *Natoli* court erred in concluding that section 402(b) of the CSA violated the equal protection clause. However, the *Bradley* court did find that the challenged portion of the statute violated the due process clause of the Illinois Constitution. The court noted that the legislature intended that those who traffic in and deliver drugs should be subject to more severe sentences than those who merely possess them. The court held that because section 402(b) prescribes a greater sentence for possession of a schedule IV substance than section 401(e) sets forth for delivery of the same substance, section 402(b) was in contravention of the express intent of the legislature.

In *People v. Morris* (1990), 136 Ill. 2d 157, 554 N.E.2d 215, the Illinois Supreme Court found the penalty provision of section 4—104(b)(2) of the Illinois Vehicle Code unconstitutional. The defendant was found guilty of the offense of possession of an altered temporary registration permit (or as commonly referred to a license-applied-for-sticker) in violation of section 4—103(a)(3) of the Illinois Vehicle Code. The penalty classification for 4—103(a)(3) was a Class 2 felony, which carries a penalty of three to seven years of imprisonment. The defendant had been found guilty of having altered the expiration date on his temporary registration permit. In his post-trial motion defendant noted the legislature had recently increased the penalty for the altered permit offense from a Class 4 to a Class 2 felony and that, as a result, the classification of the penalty for the offense of possession of a stolen motor vehicle was the same as the classification of the penalty for the offense of altering a temporary registration permit. Defendant argued the increased penalty violated his rights of due process and proportionate penalties as guaranteed by the Illinois Constitution. The Illinois Supreme Court found that the trial court was correct in holding unconstitutional the penalty of a Class 2 felony for the alteration by an owner of an automobile of the temporary registration permit for that automobile and stated that such a penalty was violative of the due process clause of our constitution. The court further found the penalty violated the guarantee of proportionate penalties in our constitution. See Ill. Const. 1970, art. I, § 11.

The standard of review under the proportionate penalties provi-

sion was stated in *People v. Gonzales* (1962), 25 Ill. 2d 235, 184 N.E.2d 833, as follows:

"'This court has traditionally been reluctant to override the judgment of the General Assembly with respect to criminal penalties. It indicated at an early date that the constitutional command that "penalties shall be proportioned to the nature of the offense" would justify interference with the legislative judgment only if the punishment was "cruel," "degrading," or "so wholly disproportionate to the offense committed as to shock the moral sense of the community."'" *Steppan*, 105 Ill. 2d at 320, quoting *Gonzales*, 25 Ill. 2d at 240.

■ Despite the State's excellent argument, we must strike down the statute as unconstitutionally violative of due process and proportionality requirements of the Illinois Constitution. Section 6—301.2 of the Illinois Vehicle Code states that the possession of a fraudulent driver's license poses a greater threat to the public than distributing the same license. We can perceive of no manner in which an individual could distribute a driver's license without at the very least having constructive possession. As a result we find the penalty provision is not reasonable. We hold that the penalty provided by section 6—301.2(c) (a Class 4 felony) is disproportionate to the seriousness of the offense committed when considered in light of the offense of distributing a fraudulent driver's license (a Class B misdemeanor).

■ The State makes an alternative argument that when section 6—301.2 of the Illinois Vehicle Code is read in its entirety, it is clear from the plain language of the statute that paragraph 10 of subsection (b) does not prohibit one from distributing an actual fraudulent driver's license as defendant contends, but rather, it prohibits one from advertising or distributing advertisements regarding obtaining fraudulent driver's licenses. The State maintains that according to the plain language of the statute, subsection (b)(9) prohibits duplicating, manufacturing, transferring or selling a fraudulent driver's license and that when properly read in conjunction with subsection (b)(10), it is clear that the legislature would not repeat the same offense, and then prescribe a different penalty; therefore, in order to give harmonious effect to the statute, subsection (b)(10) must properly be interpreted to prohibit the distribution of advertisements, such as flyers, regarding the availability of fraudulent driver's licenses, not the distribution of an actual fraudulent driver's license itself, since that offense is covered by subsection (b)(9). The State concludes its argument by stating that "since section 6—301.2 actually provides the same penalty for possessing and distributing a fraudulent driver's license, both are classified as Class 4 felonies, defendant's argument that the statute is unconstitutional is completely meritless."

Black's Law Dictionary defines "distribute" as "[t]o deal or divide out in proportion or in shares" and "distribution" as "[t]he giving out or division among a number, sharing or parceling out, allotting, dispensing, apportioning." (Black's Law Dictionary 426 (5th ed. 1979).) "Transfer" is defined as:

> "To convey or remove from one place, person, etc., to another; pass or hand over from one to another; specifically, to change over the possession or control of (as, to transfer a title to land)." (Black's Law Dictionary 1342 (5th ed. 1979).)

Black's Law Dictionary defines "advertise" as:

> "To advise, announce, apprise, command, give notice of, inform, make known, publish. On call to the public attention by any means whatsoever. Any oral, written, or graphic statement made by the seller in any manner in connection with the solicitation of business and includes, without limitation because of enumeration, statements and representations made in a newspaper or other publication or on radio or television or contained in any notice, handbill, sign, catalog, or letter, or printed on or contained in any tag or label attached to or accompanying any merchandise." (Black's Law Dictionary 50 (5th ed. 1979).)

Notwithstanding the State's artful semantics, and the language of paragraph (b)(10), a plain reading of paragraph (b)(9) prohibits the distribution of a fraudulent driver's license. Paragraph (b)(9) prohibits advertising *or* distribution and we cannot reasonably read the paragraph to solely prohibit the distribution of advertising materials as the State argues. Accordingly, we find no merit to the State's alternative argument. We find that section 6—301.2 does not provide the same penalty for knowingly possessing and distributing a fraudulent driver's license.

Since a statute containing prohibitive language without a penalty is a nullity, a possession charge against the defendant cannot be maintained. (See *People v. Natoli* (1979), 70 Ill. App. 3d 131, 387 N.E.2d 1096; see also *People v. Kimmons* (1979), 79 Ill. App. 3d 601, 399 N.E.2d 187.) In view of our conclusion, the statute itself, although constitutional, may be left without any sentencing mechanism for possession of a fraudulent driver's license. We urge the legislature to correct this situation by setting forth in plain English what it means.

Accordingly, for all the reasons set forth above, we reverse the trial court's decision.

Reversed.

GORDON, P.J., and COUSINS, J., concur.