(No. 87900.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. GABRIELLA L. FALBE *et al.*, Appellees.

*Opinion filed January 21, 2000.—Rehearing denied April 3, 2000.*

James Creason, State's Attorney, of Salem (Norbert J. Goetten, Stephen E. Norris and Patrick D. Daly, of the Office of the State's Attorneys Appellate Prosecutor, of Mt. Vernon, of counsel), for the People.

Daniel M. Kirwan, Deputy Defender, and Lawrence J. O'Neill, Assistant Defender, of the Office of the State Appellate Defender, of Mt. Vernon, for appellees.

CHIEF JUSTICE HARRISON delivered the opinion of the court:

Defendants, Gabriella L. Falbe and Marzeal Marshall, were charged in the circuit court of Marion County with violations of section 401(c)(2) of the Illinois Controlled Substances Act (720 ILCS 570/401(c)(2) (West 1998)) (unlawful possession of cocaine with intent to deliver), said conduct allegedly occurring while defendants were on a public way within 1,000 feet of a church, a circumstance enhancing a Class 1 felony to a Class X felony (720 ILCS 570/407(b)(1) (West 1998)). Defendants filed motions challenging the constitutionality of section 407(b)(1), arguing that the statute violates due process, proportionality and equal protection clauses of the Il-

linois and United States Constitutions. The circuit court found the statute to be "unconstitutionally vague with regard to the given facts, to wit: the triggering of the enhanced penalty do [*sic*] solely to police action in selecting the locus of the offense by a traffic stop." The State appealed to the Appellate Court, Fifth District, where the cases were consolidated and subsequently transferred to this court pursuant to appellate court orders citing Supreme Court Rules 302(a) and 365 (134 Ill. 2d R. 302(a); 155 Ill. 2d R. 365). Although Rule 603 (134 Ill. 2d R. 603), rather than Rule 302(a), applies in this criminal context, the principles are the same. *People v. Fuller*, 187 Ill. 2d 1, 8 (1999). We now reverse the judgment of the circuit court and remand for further proceedings.

Since neither the facts nor the credibility of witnesses is contested, the constitutional issue having come before the circuit court on stipulated facts, a purely legal question is presented for which *de novo* review is appropriate. See *Wilson v. Department of Revenue*, 169 Ill. 2d 306, 310 (1996); *People v. Wardlow*, 183 Ill. 2d 306, 309 (1998).

According to the facts stipulated, on April 3, 1998, the Centralia police department received information that defendants, Marzeal Marshall and Gabriella Falbe, had in their possession a large quantity of cocaine at their Centralia residence. Officer Brian Atchison placed the residence under surveillance while other officers were obtaining a search warrant. However, before the officers arrived to execute the warrant, defendants left the residence in a motor vehicle. Atchison followed them and, in the vicinity of the 300 block of West Nollman, observed defendants' vehicle exceed the speed limit. He stopped the vehicle, according to the stipulation, on a public way within 1,000 feet of a church. Both defendants were subsequently arrested, and a search of Gabriella Falbe resulted in the discovery of more than 70 grams of cocaine. Defendants acknowledged that Marshall had

handed the cocaine to Falbe after the traffic stop to hide and hold for him. Given the foregoing stipulated facts, and acknowledging that "legal issues," rather than "factual ones," were to be resolved, the circuit court took the matter under advisement, subsequently rendering its ruling by docket entry.

In that entry, the court recited the stipulated facts in the form of findings, and went on to hold the statute "unconstitutionally vague with regard to the given facts." The court found, "based on the facts in this case, the compelling state interest to enhance the penalty for drug delivery in specified protected zones is neither promoted or served." In so finding, the circuit court attributed dispositive significance to the traffic stop which resulted in the discovery of drugs on Falbe's person, holding that proximity to a church was "the direct result of police activity in a traffic stop without *any* showing that defendants started, stopped or ever intended to stop in the protected zone." (Emphasis in original.) Thus, the circuit court reasoned, the "purpose" of the statute was not served when applied to these defendants.

It is our duty to affirm a statute's constitutionality and validity if reasonably possible. *People v. Lee*, 167 Ill. 2d 140, 144 (1995); *People v. Shephard*, 152 Ill. 2d 489, 499 (1992). The statute enjoys a presumption of constitutionality (*People v. Lantz*, 186 Ill. 2d 243, 254 (1999)), and any doubts must be resolved in favor of the validity of the law in question (*People v. Jeffries*, 164 Ill. 2d 104, 111 (1995)). Since the circuit court apparently based its ruling upon a perceived due process violation, we first address principles applicable to due process analysis.

The determination of whether a statute is void for vagueness must be made in the factual context of each case. *Lee v. Nationwide Cassel, L.P.*, 174 Ill. 2d 540, 549 (1996); *People v. Bales*, 108 Ill. 2d 182, 189 (1985). Due process demands that a statute must not be so vague

that persons of common intelligence must necessarily guess at either its meaning or its application. *People v. Warren*, 173 Ill. 2d 348, 356 (1996). Where, as here, the statute does not impinge on first amendment rights, due process is satisfied if: (1) the statute's prohibitions are sufficiently definite, when measured by common understanding and practices, to give a person of ordinary intelligence fair warning as to what conduct is prohibited, and (2) the statute provides sufficiently definite standards for law enforcement officers and triers of fact that its application does not depend merely on their private conceptions. *Warren*, 173 Ill. 2d at 356.

Insofar as due process principles limit the legislature's authority in the first instance to enact statutes in furtherance of the state's police power, they prohibit only arbitrary or unreasonable use of that power. *People v. Brown*, 98 Ill. 2d 374, 380 (1983). To constitute a legitimate exercise of the police power, a legislative enactment must bear a reasonable relationship to the public interest intended to be protected, and the means adopted must be a reasonable method of accomplishing the desired result. *Brown*, 98 Ill. 2d at 380. In other words, the statute must be reasonably designed to remedy the evils which the legislature has determined to be a threat to the public health, safety and general welfare. *People v. Reed*, 148 Ill. 2d 1, 11 (1992). It is not our role to determine whether the legislature has chosen the best or most effective means of resolving the problems addressed by this statute. *Lantz*, 186 Ill. 2d at 254.

Arguing in support of the circuit court ruling, defendants reiterate that court's observation that the record is devoid of evidence defendants would have stopped in the protected zone around the church, or delivered drugs in the vicinity, had Officer Atchison not stopped them within the zone. They argue "because the subjective motivation of Atchison and not defendants'

intentional conduct, determined the location and thus the nature of the offense, 'fair notice' of the unlawful conduct was not provided here." They contend that the statute allows for arbitrary enforcement of the law. Defendants conclude that the purpose of the statute, "to deter drug sales in these zones," is not served in the instant case, "because defendants' [*sic*] had not intended to stop in the zone or commit a crime there." We find merit in neither the defendants' due process arguments, nor in the circuit court's analysis.

First, the statute is not vague. Section 401 of the Act proscribes four separate acts, making it "unlawful for any person knowingly to manufacture or deliver, or possess with intent to manufacture or deliver, a controlled or counterfeit substance or controlled substance analog." 720 ILCS 570/401 (West 1998). A person who commits any one of those acts "on any public way within 1,000 feet of the real property comprising any church [or other specified locations] *** is guilty of a Class X felony." 720 ILCS 570/407(b)(1) (West 1998). The statutory scheme contemplates a two-part analysis: Has defendant committed an offense set forth in section 401? If so, did the offense take place within one of the protected zones enumerated in section 407(b)(1)? The conduct prohibited by section 401 is clearly defined. Defendants cite no case authority holding section 401 vague, nor do they even argue to that effect. Moreover, there is no mistaking that enhancement to a Class X felony will result if the conduct proscribed in section 401 is committed within one of the protected zones enumerated in section 407(b)(1). That determination is merely a matter of measurement. We find the statute's prohibitions are sufficiently definite to give fair warning as to what conduct is prohibited, and they provide adequate standards for law enforcement officers and triers of fact in the application of its provisions. See *Warren*, 173 Ill. 2d at 356.

Second, implicit in the ruling of the circuit court, and in defendants' position, is the conclusion that a defendant who possesses drugs with an intent to deliver, but who does not intend to consummate a drug transaction within the protected zone, is not subject to a Class X felony under section 407(b)(1), that application of the statute's enhancing provisions to those facts does not serve the purpose of the statute. In support of that conclusion, the court found, and defendants argue, that the act of the police officer in stopping defendants' vehicle within the protected zone somehow created an offense, or an enhancing circumstance, which otherwise would not have existed. We find nothing of merit in either proposition.

To read the statutes so as to require an intent to actually consummate a delivery within the protected zone would entail insertion of language into the statutes which the legislature has not seen fit to include. The legislature could have specified that a defendant who possesses a controlled substance with intent to deliver must intend to actually *deliver* it *within* the protected zone; however, the legislature apparently chose a different course. That the legislature *did* choose a different course is evident when we examine the remaining proscriptions of the statute—the ones defendants have conveniently ignored. In addition to delivery and possession with intent to deliver, section 401 also prohibits "manufacture" and "possession with intent to manufacture." Those offenses can also be committed within the protected zone without any intent to actually deliver *within* the zone. If the legislature meant *only* to punish those who have delivered within the zone, and those who have a present intent to conduct drug transactions there, the prohibitions against manufacture and possession with intent to manufacture would seem to be superfluous, since the mere presence of drug traffickers and quantities of drugs would not *inevi-*

*tably* lead to deliveries within the protected zone. Clearly, it was the *presence* of both drug traffickers and quantities of drugs that the legislature sought to discourage in these sensitive areas. Their mere presence makes it *more likely* that drug deliveries will take place in the zone, whether or not deliveries are initially intended there.

We cannot say that the legislature's determination in this regard is irrational. To the contrary, it follows logically that the presence of drug traffickers and quantities of drugs in these areas is likely to result in an increase of drug transactions with all their attendant evils. Nor can we say that the decision to single out certain areas for protection is arbitrary because each of the protected zones specified in section 407 appears to correspond to a segment of our society which may well be considered particularly vulnerable and less able to protect itself from the incursions of drug trafficking. Generally speaking, schools, public housing, parks, places of worship, nursing homes, assisted-living centers, and senior citizens facilities are frequented by those who may be least able or willing to deal with drug trafficking and the crimes associated with it. Whether by virtue of the recklessness and inexperience of youth, the deprivations and disappointments of poverty, the lowering of defenses associated with relaxation and recreation, the beliefs and ideals of worship, or the infirmity of age, each of the groups normally associated with the protected zones may be less able or willing to protect itself. There is nothing arbitrary or unreasonable in the legislature's use of the police power to protect those citizens most vulnerable and in need of protection.

Nor do we find the "locus" of the traffic stop in this case in any way relevant to the constitutional issue that confronted the circuit court. If, as alleged, defendants possessed cocaine with intent to deliver, at a time when they passed through the protected zone, then the

enhanced sentencing provisions of section 407 apply to them. The officer conducting surveillance could have fol-.lowed them to their destination and arrested them there. The statute would still apply to defendants so long as they concurrently possessed cocaine with intent to deliver, and at a time when they were within a protected zone. It does not matter that defendants' entry into the protected zone may have been transient. The sequencing of the statutory scheme does not require that the underlying offense commence or terminate within the zone. Nor does it matter that defendants may not have intended to make a delivery within the zone. Indeed, it would be reasonable to presume that persons possessed of both the intent to deliver and a quantity of drugs, packaged in a manner ready for retail distribution, would not be adverse to transacting business within a protected zone through which they are passing if a willing buyer appears on the scene. The likelihood of a delivery within the zone is thus increased by the mere presence of drugs and drug traffickers.

Defendants argue that the police could "deliberately arrange a drug transaction within 1000 feet of a 'safety zone', in order to effect an enhanced penalty." However, these defendants do not contend that they were lured into the zone. From the facts stipulated, it appears that they entered voluntarily without the encouragement of law officers. The defendants' conduct brought them within the express terms of the statute, not within the hypothetical posed. Thus, they do not have standing to challenge the statute as it might be applied to others in different circumstances. *People v. Bailey*, 167 Ill. 2d 210, 232 (1995); *People v. Blackorby*, 146 Ill. 2d 307, 320-21 (1992). Section 407 affords these defendants fair warning of what conduct is prohibited; it provides adequate standards for law enforcement officers and triers of fact in the application of its provisions; and it constitutes a le-

gitimate exercise of the police power. It comports with
due process standards and the circuit court erred in rul-
ing otherwise.

Defendants, noting that it is the correctness of the
circuit court's ruling, not its reasoning, which must be
reviewed (*People v. Nash*, 173 Ill. 2d 423, 432 (1996)),
raise an alternative theory in support of that ruling. They
argue that section 407(b)(1) is unconstitutional because
it violates the establishment clauses of both the first
amendment to the United States Constitution (U.S.
Const., amend. I) and the Illinois Constitution (Ill. Const.
1970, art. I, § 3).

The establishment clause of the first amendment
(U.S. Const., amend. I) prohibits state and federal action
"favoring the tenets or adherents of any religion or of
religion over nonreligion." *McDaniel v. Paty*, 435 U.S.
618, 638, 55 L. Ed. 2d 593, 608, 98 S. Ct. 1322, 1334
(1978) (Brennan, J., concurring, joined by Marshall, J.);
*In re Marriage of Zucco*, 150 Ill. App. 3d 146, 154 (1986).
Our own state constitution provides in pertinent part
that "[n]o person shall be required to attend or support
any ministry or place of worship against his consent, nor
shall any preference be given by law to any religious de-
nomination or mode of worship." Ill. Const. 1970, art. I,
§ 3. The restrictions of the Illinois Constitution concern-
ing the establishment of religion have been held to be
identical to those imposed by the first amendment to the
Constitution of the United States. *People ex rel. Klinger
v. Howlett*, 56 Ill. 2d 1, 3-4 (1973). Thus, any statute
which is valid under the first amendment is also valid
under the Constitution of Illinois. *Howlett*, 56 Ill. 2d at 4.

In determining whether government action offends
the establishment clause courts have continued to apply
the essential elements of the tripartite test established in
*Lemon v. Kurtzman*, 403 U.S. 602, 29 L. Ed. 2d 745, 91 S.
Ct. 2105 (1971) (see *Agostini v. Felton,* 521 U.S. 203, 232,

138 L. Ed. 2d 391, 420, 117 S. Ct. 1997, 2015 (1997)), notwithstanding the United States Supreme Court's professed "unwillingness to be confined to any single test or criterion" (*Lynch v. Donnelly*, 465 U.S. 668, 679, 79 L. Ed. 2d 604, 613, 104 S. Ct. 1355, 1362 (1984)), and its periodic criticism of the test itself (see *Board of Education of Kiryas Joel Village School District v. Grumet*, 512 U.S. 687, 129 L. Ed. 2d 546, 114 S. Ct. 2481 (1994); *Lamb's Chapel v. Center Moriches Union Free School District*, 508 U.S. 384, 124 L. Ed. 2d 352, 113 S. Ct. 2141 (1993)). Nonetheless, it is obvious from a reading of *Agostini* that the United States Supreme Court has not abandoned *Lemon*. The parties in this case cite *Lemon* as the applicable test and we find it both applicable and useful in lieu of a viable, structured, alternative analysis. Under *Lemon*, to pass constitutional muster, a statute's legislative purpose must be secular, its principal or primary effect cannot advance or inhibit religion, and it must not foster an excessive governmental entanglement with religion. *Lemon*, 403 U.S. at 612-13, 29 L. Ed. 2d at 755, 91 S. Ct. at 2111; *Agostini v. Felton*, 521 U.S. 203, 222-23, 232, 138 L. Ed. 2d 391, 414, 420, 117 S. Ct. 1997, 2010, 2015 (1997); *Pre-School Owners Ass'n of Illinois, Inc. v. Department of Children & Family Services*, 119 Ill. 2d 268, 279 (1988).

Defendants first argue that the statute does not serve a legitimate secular purpose. They arrive at that conclusion having begun from a snippet of "legislative history," a brief discussion among four state representatives during which one indicated that religious leaders and mayors in his district were concerned about drug trafficking around churches, another asked if studies had been done on the efficacy of an analogous enactment, the "Safe School Zone Law," in deterring crime in the vicinity of schools, a third suggested that enactment of that measure had not deterred crime in school zones, and a fourth

asked if drug trafficking around churches was really a problem. Defendants do not offer us any insight into the thoughts of the 114 remaining representatives, or the 59 members of the senate, all of whom had a vote to cast when this legislation was passed and enacted into law. In any event, from this meager empirical and rhetorical premise, defendants conclude that legislators knew "the Safe School Zone enhanced penalty provision ha[d] not deterred drug transactions near schools," and that "the church safe zone enhanced penalty would not effect its stated purpose" either, and defendants surmise that there was no "actual problem with drug transactions near churches," *ergo*, the legislature "was not addressing a legitimate societal problem; rather, the legislature sought merely to assuage the religious community in Representative Jones' district."

Consideration of the statutory scheme of section 407, and its component parts, belies defendants' contention. As touched upon earlier, in the due process segment of our analysis, we find section 407's enhanced penalty provisions are obviously intended to protect segments of our society which may well be considered particularly vulnerable and less able to deal with the incursions of drug trafficking and its related evils. The unifying factor is vulnerability, not religion. The secular purpose of the statute is to "deter narcotics activity" (*Shephard*, 152 Ill. 2d at 503), protecting those the legislature deemed in need of protection through harsher punishment for drug traffickers who commit certain offenses within close proximity of sensitive areas where the vulnerable population may be located. As noted in *People v. Carter*, 228 Ill. App. 3d 526, 534-35 (1992), "Places of worship reach out and extend an invitation to the public; doors are unlocked; security is relaxed." The very ideals of those who worship there can make them vulnerable in the same sense that school children, the poor, and the aged may be

at risk. Religion has not been singled out for special treatment. We can discern a broad-based secular purpose from the face of the statute; we need not, as defendants suggest, inquire into the irrelevant motives of those who enacted it. See *Board of Education v. Mergens*, 496 U.S. 226, 249, 110 L. Ed. 2d 191, 215, 110 S. Ct. 2356, 2371 (1990). A statute will be invalidated on the ground that a secular purpose is lacking only where there is no question that the statute or activity was motivated wholly by religious considerations. *Lynch v. Donnelly*, 465 U.S. 668, 680, 79 L. Ed. 2d 604, 614, 104 S. Ct. 1355, 1362 (1984).

Defendants claim that the statute violates the second prong of the *Lemon* test because its primary effect is to advance religion. We disagree. Defendants surely argue tongue in cheek when they state: "The statute confers a benefit on an explicitly religious basis by extending to clergy and worshippers governmental protection given to no other class of people, *save students, teachers, and public housing residents.*" (Emphasis added.) Defendants omit school bus drivers, anyone out for a stroll through a public park, senior citizens, residents in nursing homes, and workers in all of the aforementioned facilities. Defendants' assertion is baseless. Neither the purpose of the statute nor its primary effect is the advancement of religion. Defendants' contention that the statute is meant to protect religious-related structures, buildings and real property is no more convincing for similar reasons.

Defendants attempt to meet the third prong of the *Lemon* test by claiming that uncertainty over the definition of a "place of worship," as used in the statute, may create excessive governmental entanglements between church and state. Defendants suggest that courts may have to decide what constitutes religious worship.

Defendants pose an interesting hypothetical wherein pagan worshipers gather in an abandoned barn to sacrifice a cat while a defendant delivers cocaine to an

undercover officer outside. Is the barn a "place of worship?" They raise another wherein the Old Order Amish worship in their homes and barns. Defendants ask if either of those sites would constitute a "place used primarily for religious worship" within the meaning of the statute. As intriguing as those questions may be to defendants, they do not apply to defendants' circumstances. Defendants do not contest that they were within 1,000 feet of "a church." They stipulated to that effect. For purposes of our analysis here, we need not address the issue of what constitutes a "place of worship." That term, as it is employed in the statute, is neutral as to denomination and expansive in its scope, as the legislature no doubt intended. We assume, as the Supreme Court did in *Larkin v. Grendel's Den, Inc.*, 459 U.S. 116, 120 n.3, 74 L. Ed. 2d 297, 303 n.3, 103 S. Ct. 505, 509 n.3 (1982), that courts will construe the term in its broadest sense, so as to avoid "serious constitutional questions."

Defendants have not met the standards of the *Lemon* test and, consequently, have not shown that the statute violates the establishment clause. Since we have already determined that the circuit court erred when it ruled that the statute fails to comport with due process, we reverse the judgment of the circuit court and remand this matter for further proceedings.

*Circuit court judgment reversed;*
*cause remanded.*

JUSTICE BILANDIC, dissenting:

This court has no jurisdiction to hear the State's appeal. This appeal should therefore be dismissed, and the cause should be transferred to the appellate court.

In *Rehg v. Illinois Department of Revenue*, 152 Ill. 2d 504, 508-09 (1992), this court noted that a circuit court order holding *only* that a statute is unconstitutional "as applied" in a particular case is not directly appealable to this court under Supreme Court Rule 302(a)(1). In *People*

*v. Fuller*, 187 Ill. 2d 1, 8-10 (1999), a majority of this court overruled *Rehg* and determined that this court has jurisdiction over all appeals from circuit court orders holding statutes unconstitutional, even if the circuit court declares the statute unconstitutional only as applied to that case. I dissented in *Fuller*, and I continue to adhere to the rationale set forth in that dissent. See *Fuller*, 187 Ill. 2d at 21-24 (Bilandic, J., dissenting). Here, the circuit court declared section 407(b)(1) to be "unconstitutionally vague with regard to the given facts, to wit: the triggering of the enhanced penalty do [*sic*] solely to police action in selecting the locus of the offense by a traffic stop." Because the circuit court held only that the statute is unconstitutional as applied to defendants in this case, the circuit court's order is not directly appealable to this court, and we therefore do not have jurisdiction over the State's appeal. For this reason, I respectfully dissent.

JUSTICE FREEMAN, also dissenting:

To deal effectively with its case load, this court must husband its time and resources properly. The majority ignores these realities. Its continued invocation of jurisdiction, where none exists, imposes an undue burden upon this court, and severely curtails the role of our appellate court in constitutional review. Jurisdiction is not appropriate in this case. Accordingly, I must dissent.

Supreme Court Rule 603 (134 Ill. 2d R. 603) provides:

"Appeals in criminal cases in which a statute of the United States or of this State has been held invalid and appeals by defendants from judgments of the circuit courts imposing a sentence of death shall lie directly to the Supreme Court as a matter of right. All other appeals in criminal cases shall be taken to the Appellate Court."

Thus, with the exception of cases in which a defendant has been sentenced to death, the jurisdiction of this court in criminal cases is limited to appeals in which a statute of the United States or of Illinois has been held invalid.

This court has long recognized the distinction between a statute which is unconstitutional on its face and a statute which is unconstitutional as applied. When a statute is unconstitutional on its face, the statute is invalid from its inception and has no force and effect upon any person or entity. *People v. Zeisler*, 125 Ill. 2d 42 (1988); *People v. Manuel*, 94 Ill. 2d 242 (1983); *Van Driel Drug Store, Inc. v. Mahin*, 47 Ill. 2d 378 (1970). In contrast, when a statute is unconstitutional as applied, the statute itself is not invalid; it is simply not applied to a particular person or entity because to do so would violate a constitutional right. See *East St. Louis Federation of Teachers, Local 1220 v. East St. Louis School District No. 189 Financial Oversight Panel*, 178 Ill. 2d 399 (1997); *People v. Hamm*, 149 Ill. 2d 201 (1992); see also 1 N. Singer, Sutherland on Statutory Construction § 2.06 (5th ed. 1994). It follows that when a statute is declared unconstitutional on its face, the parties may appeal directly to this court under Rule 603. However, when a statute is found to be unconstitutional as applied, the statute has not been declared invalid and jurisdiction properly lies in the appellate court.

In the case at bar, a police officer observed defendants' vehicle exceed the speed limit, and stopped the vehicle on a public way within 1,000 feet of a church. The officer searched defendant Gabriella Falbe and found more than 70 grams of cocaine on her person. Unlawful possession of cocaine with intent to deliver is a Class 1 felony. 720 ILCS 570/401(c)(2) (West 1998). However, if the conduct takes place within 1,000 feet of a church, the Class 1 felony is enhanced to a Class X felony. 720 ILCS 570/407(b)(1) (West 1998). Since defendants were apprehended within 1,000 feet of a church, they were charged with a Class X felony.

In the trial court, defendants argued that section 407(b)(1) was unconstitutional as applied. The trial court

agreed. The court found that defendants' arrest near the church was "the direct result of police activity in a traffic stop without *any* showing that defendants started, stopped or ever intended to stop in the protected zone." (Emphasis in original.) The court ruled that "based on the facts in this case, the compelling state interest to enhance the penalty for drug delivery in specified protected zones is neither promoted or served."

The trial court declared section 407(b)(1) unconstitutional as applied, not invalid on its face. Indeed, in *People v. Shephard*, 152 Ill. 2d 489 (1992), this court upheld the constitutionality of section 407(b)(1) (Ill. Rev. Stat. 1989, ch. 56½, par. 1407(b)(1), now codified at 720 ILCS 570/407(b)(1) (West 1998)) with respect to commission of drug crimes within 1,000 feet of public housing. See also *People v. R.L.*, 158 Ill. 2d 432 (1994); *People v. Brooks*, 271 Ill. App. 3d 570 (1995). And in *People v. Pacheco*, 281 Ill. App. 3d 179 (1996), our appellate court upheld the validity of section 407(b)(1) with respect to commission of drug crimes within 1,000 feet of school property. See also *People v. Owens*, 240 Ill. App. 3d 168 (1992); *People v. Clark*, 231 Ill. App. 3d 571 (1992). Since section 407(b)(1) is constitutional on its face, but was declared invalid as applied, an appeal to the appellate court was appropriate.

As Justice McMorrow observed in her dissent in *People v. Fuller*, 187 Ill. 2d 1, 27-28 (1999) (McMorrow, J., dissenting), Rule 603 and Rule 302(a) (134 Ill. 2d R. 302(a)) are:

"based on the premise that some types of cases are of such pressing importance that, upon review, they should bypass the normal appellate process and proceed directly to this court. *Rehg* [*v. Illinois Department of Revenue*, 152 Ill. 2d 504 (1992) (overruled in part by *Fuller*, 187 Ill. 2d 1, and by *Wilson v. Department of Revenue*, 169 Ill. 2d 306 (1996))] determined that circuit court decisions holding a statute facially unconstitutional rise to this level of importance.

Implicitly, *Rehg* recognized that holding a statute facially invalid attacks the power of the legislature to enact the statutory provision itself, and therefore, that as a general matter, such a holding will be of sufficient importance and general applicability to warrant direct review in this court."

On the other hand, a decision of the circuit court holding a statute unconstitutional as applied affects only the particular litigants and not the public at large. Such a decision is not infused with the sense of urgency and public importance which justify bypassing the normal appellate review process. I, for one, have faith in the ability of our appellate court judges to deal effectively with their jurisdictional case load. To invoke direct appellate jurisdiction, as the majority does in the present case, is to effectively curtail participation of the appellate court in the constitutional review process.

In his dissent in *Fuller*, 187 Ill. 2d at 22, Justice Bilandic observed:

"because this court has a limited amount of time and resources, we must be able to decline to hear those rulings that are not publicly significant." *Fuller*, 187 Ill. 2d at 22 (Bilandic, J., dissenting).

Justice McMorrow elaborated:

"Each year this court receives thousands of petitions for leave to appeal from decisions of the appellate court under Rule 315 (177 Ill. 2d R. 315). Because this court has a finite amount of time and resources, many of these petitions must be denied, despite the important issues they raise. Viewed in this context, providing mandatory direct appellate review to appeals brought under Rule 302(a)(1) or Rule 603 is justifiable when the cases are of public importance, but it is clearly not justifiable when the issues are of significance to only a single litigant. Inevitably, as a result of the majority's decision today, important appellate court decisions appealed under Rule 315 will not be reviewed by this court." *Fuller*, 187 Ill. 2d at 30 (McMorrow, J., dissenting).

The majority is not justified in invoking jurisdiction in

the present case. The appellate court should be given an opportunity to resolve constitutionality of the statute in question. For these reasons, I respectfully dissent.

JUSTICE McMORROW joins in this dissent.