Toney v. Bower

February 08, 2001

NO. 4-00-0401

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

BARBARA B. TONEY, on behalf of herself ) Appeal from

and her minor child; COLMAN BUCHBINDER; ) Circuit Court of

REV. D. FLOYD W. DAVIS; BRENDA DIEHL; )    Sangamon County

and DEBORAH S. McCLEARY on behalf of ) No. 99MR413

herself and her minor children, )

Plaintiffs-Appellants, )

)

GLEN L. BOWER, in His Official Capacity )

as Director, Illinois Department of )

Revenue of the State of Illinois, and )

THE ILLINOIS DEPARTMENT OF REVENUE, )

Defendants-Appellees, )

and )

PATTY REDPATH, in her own behalf and as )

Natural Guardian of her Children, JOEY )

REDPATH, JESSE REDPATH, and ALEX )

REDPATH; DR. MATTHEW KUHN, in his own )

behalf and as Natural Guardian of his )

Children, ALEXIS KUHN and ANDREW KUHN; )

MARY ELLEN LOVELL, in her own behalf )

and as Natural Guardian of her )

Children, RYAN LOVELL and HAYLEY )

LOVELL; MARIA RAZO, in her own behalf )

and as Natural Guardian of her )

Children, CECILIA RAZO and GLORIA RAZO; )

RABBI DAVID SCHNELL, in his own behalf )

and as Natural Guardian of his )

children, TZVI SCHNELL, AVIVIA SCHNELL, )

DEVORA SCHNELL, SHMUEL SCHNELL, NECHAMA )

SCHNELL, EPHRAIM SCHNELL, and ESTHER )

SCHNELL; SILVIA ESPINOZA, in her own )

behalf and as Natural Guardian of her )

Children, DANIEL ESPINOZA, ONYX )

ESPINOZA, and CHRISTOPHER ESPINOZA; DR. )

SHAKIR MOIDUDDIN, in his own behalf and )

as Natural Guardian of his Children, )

ABED MOIDUDDIN and AKIF MOIDUDDIN; ANNE )

SAPIENZA, in her own behalf and as )

Natural Guardian of her Children, )

CHRISTINA SAPIENZA, ANDREA SAPIENZA, )

GERARD SAPIENZA, MARIA SAPIENZA, )

PHILLIP SAPIENZA, and GINA SAPIENZA; )

STEVEN PANCER, in his own behalf and as )

Natural Guardian of his Children JOSHUA )

PANCER, ARI PANCER, and MEIR PANCER; )

MICHAEL RIORDAN, in his own behalf and )

as Natural Guardian of his Children, )

BRIAN RIORDAN and KEVIN RIORDAN; DALYN )

DYE, in his own behalf and as Natural )

Guardian of his Child, NATHAN DYE; and )

HELEN MIXON, in her own behalf and as )

Natural Guardian of her Child, TERMAINE ) Honorable

MIXON, ) Thomas R. Appleton,

Intervenors-Appellees. ) Judge Presiding.

_________________________________________________________________

JUSTICE GARMAN delivered the opinion of the court:

Plaintiffs filed a complaint in the Sangamon County circuit court, alleging that section 201(m) of the Illinois Income Tax Act (Tax Code) (35 ILCS 5/201(m) (West Supp. 1999)) is unconstitutional, in that it violates section 3 of article I (Ill. Const. 1970, art. I, §3), section 3 of article X (Ill. Const. 1970, art. X, §3), section 1(a) of article VIII (Ill. Const. 1970, art. VIII, §1(a)), and section 2 of article IX (Ill. Const. 1970, art. IX, §2) of the Illinois Constitution of 1970 (Illinois Constitution).  The trial court granted defendants' motion to dismiss (735 ILCS 5/2-615 (West 1998)), and plaintiffs appeal.  We affirm.

I. BACKGROUND

Section 201(m) of the Tax Code allows, beginning with tax years ending after December 31, 1999, a credit (hereinafter Credit) of up to $500 against income tax liability equal to 25% of qualified education expenses incurred on behalf of qualifying pupils.  The term "qualifying pupils" means individuals who (1) are Illinois residents, (2) are under the age of 21 years at the close of the school year for which a credit is sought, and (3) were full-time pupils enrolled in a kindergarten through twelfth-grade education program at any public or nonpublic school that is in compliance with Title VII of the Civil Rights Act of 1964 (42 U.S.C. §2000e 
et
 
seq
. (1994)) and attendance at which satisfies the requirements of section 26-1 of the School Code (105 ILCS 5/26-1 (West 1998)).  "Qualified education expense" is defined as an amount incurred on behalf of a qualifying pupil in excess of $250 for tuition, book fees, and lab fees at the school in which the pupil is enrolled.  35 ILCS 5/201(m) (West Supp. 1999).  

Plaintiffs filed their complaint for declaratory relief in November 1999.  In attacking the statute's constitutionality, plaintiffs alleged that (1) few, if any, taxpayers whose children attend Illinois public schools will receive any benefit from the Credit, because (a) public schools do not charge tuition to pupils who reside in the school district in which the school is located; (b) public schools do not charge book or lab fees in excess of $250 per year per pupil; (c) although tuition is charged for pupils who attend a school not in the district where they live, that number is small; and (d) according to the Illinois State Board of Education (Board), during the 1998-99 school year, less than 1% of the 2 million students enrolled in public schools attended schools outside their home district; (2) the Credit discriminates against low-income parents because they earn insufficient income to claim the Credit; (3) since the Credit allows money that would otherwise be paid to the State in income taxes to be used to pay private school expenses, it will reduce the State's annual revenue and is the practical equivalent of a legislative appropriation; (4) virtually all the money that will be diverted from the State treasury as a result of the Credit will be expended at private schools, the vast majority of which are sectarian; (5) the Credit requires plaintiffs to support a ministry or place of worship against their consent and a preference is given by law to a religious denomination or mode of worship, in violation of section 3 of article I of the Illinois Constitution; (6) the diversion of State revenue resulting from the Credit constitutes an appropriation or payment from a public fund and a grant or donation of money made by the State to help support sectarian private schools and for other sectarian purposes, in violation of section 3 of article X of the Illinois Constitution; (7) because religious education and activities are not "public purposes," the Credit violates the requirement in section 1(a) of article VIII of the Illinois Constitution that public funds shall be used only for public purposes; and (8) a distinction exists between low-income and high-income taxpayers as to who will be able to take full advantage of the Credit, and since this distinction bears no reasonable relationship to the Credit's stated objective, it violates section 2 of article IX of the Illinois Constitution.  

The trial court allowed a group of parents to intervene as defendants.  Intervenors and defendants filed separate motions to dismiss the complaint.  Plaintiffs filed a motion for summary judgment.  

In April 2000, the trial court entered a written order dismissing plaintiffs' complaint and denying plaintiffs’ motion for summary judgment
.  The court found that (1) money accruing from the Credit did not constitute public money or an expenditure of public money, (2) the Credit did not constitute an unreasonable tax classification, and (3) the Credit did not provide support for sectarian schools.  The court noted that money is not public until it belongs to the State and the fact that a State allows individual taxpayers to keep more of their own money does not make it the State’s money.  Thus, no one was required to support religion.  The trial court also found the United States Supreme Court’s decision in 
Mueller v. Allen
, 463 U.S. 388, 77 L. Ed. 2d 721, 103 S. Ct. 3062 (1983), controlling.  Plaintiffs appeal.

II. ANALYSIS

A. Standard of Review

A motion to dismiss under section 2-615 of the Code of Civil Procedure (Procedure Code) (735 ILCS 5/2-615 (West 1998)) attacks the legal sufficiency of the complaint.  The question presented is whether the allegations of the complaint, when viewed in a light most favorable to plaintiffs, are sufficient to state a cause of action upon which relief can be granted.  
Vernon v. Schuster
, 179 Ill. 2d 338, 344, 688 N.E.2d 1172, 1175 (1997).  A reviewing court will uphold a trial court's decision to dismiss a complaint with prejudice for failure to state a cause of action if it clearly appears that no facts could be set forth that would entitle plaintiffs to relief.  
Mattis v. State Universities Retirement System
, 296 Ill. App. 3d 675, 683, 695 N.E.2d 566, 571 (1998).  

Legislative enactments enjoy a heavy presumption of constitutionality.  The party challenging the constitutionality of a statute has the burden of clearly establishing its invalidity.  
In re Marriage of Lappe
, 176 Ill. 2d 414, 422, 680 N.E.2d 380, 384 (1997).  Courts must resolve all doubts in favor of the statute's constitutionality.  
Lappe
, 176 Ill. 2d at 422, 680 N.E.2d at 384-85. 

B. Whether the Credit Constitutes an

 Appropriation or a Public Fund

The trial court found that the Credit did not violate the constitutional provisions cited by plaintiffs because it does not constitute public funds but merely allows people to keep more of their own money.  Plaintiffs argue that following the trial court's reasoning would permit the State to do indirectly through the Tax Code what it cannot do directly.  Plaintiffs insist that the effect of reimbursing parents for private school tuition expenses through the Credit is exactly the same as reimbursing them through payments from the State treasury.  The cost of a tax benefit given to certain taxpayers is necessarily borne by other taxpayers in the form of higher taxes or reduced services; thus, these taxpayers are compelled to support the religious preferences of those who will be able to claim the Credit.  

Section 3 of article I of the Illinois Constitution guarantees the free exercise of religion and also states:

"No person shall be required to attend or support any ministry or place of worship against his consent, nor shall any preference be given by law to any religious denomination or mode of worship."  Ill. Const. 1970, art. I, §3.

Section 3 of article X of the Illinois Constitution prohibits the State and its political subdivisions from making any appropriation or paying from any public fund anything in aid of any  church or sectarian purpose, or to help support or sustain any school or other literacy or scientific institution controlled by any church or sectarian denomination.   

Plaintiffs rely on cases from other states.  However, our supreme court has stated that the meaning of a statute or constitutional provision depends upon the intent of the drafters at the time of its adoption.  A court has the duty to ascertain and effectuate that intent.  The ordinary meaning of the language employed by the drafters in the questioned statutory or constitutional clause provides the best evidence of the drafters' intent.  
Sayles v. Thompson
, 99 Ill. 2d 122, 125, 457 N.E.2d 440, 442 (1983); 
Cincinnati Insurance Co. v. Chapman
, 181 Ill. 2d 65, 77, 691 N.E.2d 374, 380 (1998).  Defendants and intervenors urge us to give the terms "public fund" and "appropriation" their plain and ordinary meaning, as did the trial court.  

"Public fund" is defined in Black's Law Dictionary as, "1. The revenue or money of a governmental body.  2. The securities of the national government or a state government."  Black's Law Dictionary 682 (7th ed. 1999).  In contrast, "tax credit" is defined as "[a]n amount subtracted directly from one's total tax liability, dollar for dollar, as opposed to a deduction from gross income."  Black's Law Dictionary 1473 (7th ed. 1999).   

Plaintiffs direct us to no evidence demonstrating that the framers of the Illinois Constitution intended the term "public fund" to have the broad, expansive meaning that plaintiffs would give it.  Giving the term such a meaning may have broad implications for other tax credits, deductions, and exemptions from taxation, such as the property tax exemption for property used exclusively for religious purposes (35 ILCS 200/15-40 (West 1998)) and the partial state income tax exemption for religious organizations (35 ILCS 5/205(a) (West 1998)).  We are unwilling to interpret the term "public fund" so broadly as to endanger the legislative scheme of taxation.  

Similarly, the Credit does not constitute an "appropriation," as that term is commonly understood.  An appropriation involves "'the setting apart from public revenue a certain sum of money for a specific object.'"  
American Federation of State, County & Municipal Employees v. Netsch
, 216 Ill. App. 3d 566, 567, 575 N.E.2d 945, 946 (1991), quoting 
Illinois Municipal Retirement Fund v. City of Barry
, 52 Ill. App. 3d 644, 646, 367 N.E.2d 1048, 1049 (1977).  Accordingly, we reject plaintiffs' argument that a tax credit constitutes a  public fund or an appropriation of public money to which section 3 of article I, section 3 of article X, and section 1(a) of article VIII of the Illinois Constitution apply.  However, were we to agree with plaintiffs' argument on this issue, we would find that the Credit does not contravene the constitutional provisions plaintiffs cite. 

C. Section 3 of Article I and Section 3 of Article X

of the Illinois Constitution

Our supreme court has held that the restrictions in our constitution concerning the establishment of religion are identical to those contained in the federal establishment clause (U.S. Const., amend. I).  In 
Board of Education, School District No. 142 v. Bakalis
, 54 Ill. 2d 448, 451, 299 N.E.2d 737, 738 (1973), the plaintiff attacked the constitutionality of a statute that required school boards to provide 
the same bus transportation for nonpublic school students as provided for public school students.  Plaintiff argued that the trial court erred in holding that, under the United States Supreme Court's interpretations of the first amendment to the federal constitution (U.S. Const., amend. I), the state statute was constitutional.  
Bakalis
, 54 Ill. 2d at 453, 299 N.E.2d at 739.  Plaintiff contended that, assuming this to be true, section 3 of article X of the Illinois Constitution is more restrictive than the federal establishment clause and prohibits even incidental aid to sectarian schools.  In support of this argument, plaintiffs noted that the language of section 3 of article X is identical to that of section 3 of article VIII of the Illinois Constitution of 1870 (Ill. Const. 1870, art. VIII, §3), and that both the 1870 and 1970 constitutional conventions rejected efforts to amend or replace it with a provision similar to the establishment clause.  
Bakalis
, 54 Ill. 2d at 461, 299 N.E.2d at 743.  The supreme court stated its opinion that the language of section 3 of article X of the Illinois Constitution was retained from the 1870 Constitution to maintain the existing détente that had developed between the state and nonpublic schools.  
Bakalis
, 54 Ill. 2d at 462, 299 N.E.2d at 743.   The court reviewed the proceedings of the 1970 Convention and noted that the Committee on Education concluded that the words "aid," "support or sustain," and "sectarian purpose" yield the same results as the United States Supreme Court's interpretation of the word "establish" in the federal first amendment.  
Bakalis
, 54 Ill. 2d at 463, 299 N.E.2d at 744-45.  Thus, any program that is constitutional under the establishment clause is constitutional under section 3 of article X of the Illinois Constitution.  
Bakalis
, 54 Ill. 2d at 464, 299 N.E.2d at 745.  

The 
Bakalis
 court found that the opinion of the committee was also the understanding of the constitutional convention and of the voters who approved the 1970 Constitution.  
Bakalis
, 54 Ill. 2d at 464, 299 N.E.2d at 745.  The busing of nonpublic school students at public expense was a long-established practice.  The court thus held that the statute did not violate section 3 of article X of the Illinois Constitution.  
Bakalis
, 54 Ill. 2d at 465, 299 N.E.2d at 745.  

The supreme court followed its decision in 
Bakalis
 in 
People ex rel. Klinger v. Howlett
, 56 Ill. 2d 1, 305 N.E.2d 129  (1973).  That case involved three legislative programs of financial assistance to nonpublic elementary and secondary education.  
Howlett
, 56 Ill. 2d at 3, 305 N.E.2d at 130.  The court held that 
Bakalis
 was controlling in any analysis of the validity of the statutes under the Illinois Constitution and that, under United States Supreme Court decisions, statutes that are valid under the federal establishment clause must (1) have a clearly secular legislative purpose, (2) have a primary effect that neither advances nor inhibits religion, and (3) avoid an excessive government entanglement with religion.  
Howlett
, 56 Ill. 2d at 3-4, 305 N.E.2d at 130.  Applying United States Supreme Court cases, the court struck down a program that provided grants to low-income parents of private school students (
Howlett
, 56 Ill. 2d at 7, 305 N.E.2d at 132) and a program that provided textbooks and auxiliary services at State expense to nonpublic school students, while not providing the same benefit to public school students.  
Howlett
, 56 Ill. 2d at 11-12, 305 N.E.2d at 134.

Recently, the supreme court reaffirmed the holding of its 
Bakalis
 and 
Howlett
 decisions.  In 
People v. Falbe
, 189 Ill. 2d 635, 637, 727 N.E.2d 200, 203 (2000), defendants were charged with unlawful possession of cocaine with intent to deliver (720 ILCS 570/401(c)(2) (West 1998)), said conduct occurring while defendants were on a public way within 1,000 feet of a church, thus enhancing the sentence from a Class 1 felony to a Class X felony (720 ILCS 570/407(b)(1) (West 1998)). 
 Defendants challenged the constitutionality of the statute (
Falbe
, 189 Ill. 2d at 637, 727 N.E.2d at 203) and argued that the statute violated the federal establishment clause and section 3 of article I of the 1970 Constitution (
Falbe
, 189 Ill. 2d at 645, 727 N.E.2d at 206).  The court noted that in 
Howlett
, it held that the restrictions of the Illinois Constitution concerning the establishment of religion are identical to those imposed by the federal establishment clause and that any statute that is valid under that clause is also valid under the Illinois Constitution.  
Falbe
, 189 Ill. 2d at 645, 727 N.E.2d at 207.  The court went on to find the statute constitutional.  
Falbe
, 189 Ill. 2d at 649, 727 N.E.2d at 209.  

The parties devote considerable argument to the question of whether 
Bakalis
 and 
Howlett
 require application of United States Supreme Court establishment clause precedent only as it existed at the time of those decisions.  Plaintiffs believe that in 1973, section 3 of article X had the same meaning as did the establishment clause, as reflected in the then-existing decisions of the United States Supreme Court.  This "existing détente" means that Illinois could provide assistance to sectarian schools in the form of purely secular services that could not be used for religious purposes, such as bus transportation or secular textbooks.  We note that plaintiffs' argument would also apply to section 3 of article I of the Illinois Constitution, since in 
Falbe
, our supreme court applied the 
Bakalis
 analysis to that constitutional provision.  

Defendants and intervenors, on the other hand, argue that 
Falbe
 indicates that the "lockstep doctrine" should be applied in cases construing the religion clauses of our constitution.  Under this doctrine, our supreme court applies decisions of the United States Supreme Court construing federal constitutional provisions to the construction of comparable provisions of our State constitution.  
People v. DiGuida
, 152 Ill. 2d 104, 118, 604 N.E.2d 336, 342 (1992).  However, that court is not bound in every case to follow this doctrine.  Rather, the court has looked to the intent behind our constitution to determine if its provisions should receive a similar interpretation to those given comparable federal constitutional provisions.  Where the language of our constitution or the debates and committee reports of the constitutional convention show that the framers intended a different construction, our supreme court will construe similar provisions in a different manner than has the United States Supreme Court. 
DiGuida
, 152 Ill. 2d at 118, 604 N.E.2d at 342.  

Given our supreme court's opinions in 
Bakalis
, 
Howlett
, and 
Falbe
, we think it likely that the court would apply the lockstep doctrine to this case.  Regardless, however, we find that United States Supreme Court precedent, including those cases decided subsequent to 1973, constitutes persuasive authority for our decision here.  We will thus apply that precedent.

1. 
Establishment Clause Precedent

In 
Lemon v. Kurtzman
, 403 U.S. 602, 606-07, 29 L. Ed. 2d 745, 752, 91 S. Ct. 2105, 2108 (1971), the Supreme Court held two state statutes unconstitutional under the first amendment.  In doing so, the Court utilized a three-part test in reviewing the statutes, holding that they must (1) have a secular legislative purpose, (2) have a primary effect that neither advances nor inhibits religion, and (3) not foster an excessive government entanglement with religion.  
Lemon
, 403 U.S. at 612-13, 29 L. Ed. 2d at 755, 91 S. Ct. at 2111.  

The Supreme Court has consistently applied this test, with some variation, in its establishment clause cases.  In 
Committee for Public Education & Religious Liberty v. Nyquist
, 413 U.S. 756, 762-65, 37 L. Ed. 2d 948, 957-58, 93 S. Ct. 2955, 2960-61 (1973), the Supreme Court used the test in striking down New York laws that gave (1) grants to nonpublic schools for maintenance and repair of their facilities, (2) tuition reimbursement grants to low-income parents who sent their children to nonpublic schools; and (3) income tax deductions to parents who did not qualify for the reimbursement grants.  The Court found that the programs did not limit the aid to secular purposes.  
Nyquist
, 413 U.S. at 774, 783, 37 L. Ed. 2d at 963-64, 968-69, 93 S. Ct. at 2966, 2970-71. 

In 
Witters v. Washington Department of Services for the Blind
, 474 U.S. 481, 482, 88 L. Ed. 2d 846, 851, 106 S. Ct. 748, 749 (1986), the Court held that rehabilitation aid payments from the State to a blind student for education at a Christian college did not violate the establishment clause.  
In applying the three-part test enunciated in 
Lemon
, the Court noted the secular purpose behind the statute, 
i.e.
, to promote the well-being of the visually handicapped through the provision of vocational rehabilitation services.  
Witters
, 474 U.S. at 485-86, 88 L. Ed. 2d at 853, 106 S. Ct. 751.  It also noted that only a minuscule amount of the aid awarded was likely to flow to religious education.  
Witters
, 474 U.S. at 486, 88 L. Ed. 2d at 853, 106 S. Ct. at 751.  
The Court noted that any aid under this program flowed to religious institutions only as a result of the "genuinely independent and private choices of aid recipients."  
Witters
, 474 U.S. at 487, 88 L. Ed. 2d at 854, 106 S. Ct. at 752.  Thus, the aid was made available without regard to the nature of the institution benefitted thereby.  
Witters
, 474 U.S. at 487, 88 L. Ed. 2d at 854-55, 106 S. Ct. at 752.  It created no financial incentive for students to attend sectarian schools.  
Witters
, 474 U.S. at 488, 88 L. Ed. 2d at 855, 106 S. Ct. at 752.

    In 
Zobrest v. Catalina Foothills School District
, 509 U.S. 1, 3, 125 L. Ed. 2d 1, 7, 113 S. Ct. 2462, 2464 (1993), the Court held that the establishment clause did not bar a public school district from providing a deaf student with a sign-language interpreter to accompany him to classes at a Catholic high school.  
The Court noted that the service provided by the school district was available to all students regardless of whether they attended public or private schools.  Thus, a government-paid interpreter would be present in a sectarian school only as the result of private choices made by individual parents.  
Zobrest
, 509 U.S. at 10, 125 L. Ed. 2d at 11, 113 S. Ct. at 2467.  The direct beneficiaries of the aid were disabled children; to the extent that sectarian schools benefitted at all from the aid, they were only incidental beneficiaries.  
Zobrest
, 509 U.S. at 12, 125 L. Ed. 2d at 13, 113 S. Ct. at 2469.  

Defendants and intervenors cite 
Mueller v. Allen
, 463 U.S. 388, 77 L. Ed. 2d 721, 103 S. Ct. 3062 (1983), where 
the Supreme Court addressed the constitutionality of a Minnesota statute under the establishment clause.  The statute allowed residents a deduction against their state income taxes for expenses paid for tuition, textbooks, and transportation of students attending elementary and secondary schools in Minnesota and certain other states.  
Mueller
, 463 U.S. at 390 n.1, 77 L. Ed. 2d at 725 n.1, 103 S. Ct. at 3064 n.1.  The Supreme Court noted that about 95% of Minnesota private school students attended sectarian schools.  
Mueller
, 463 U.S. at 391, 77 L. Ed. 2d at 725, 103 S. Ct. at 3065.  Petitioners claimed that the statute violated the establishment clause by providing financial assistance to such schools.  
Mueller
, 463 U.S. at 392, 77 L. Ed. 2d at 726, 103 S. Ct. at 3065.  Applying the first prong of the 
Lemon
 test, 
Mueller
 held that the Minnesota statute had a secular purpose, noting that (1) a state's effort to assist parents in meeting the rising costs of educating their children serves the secular purpose of ensuring that the state's citizens are well educated; (2) Minnesota could conclude that there is a strong public interest in assuring the continued financial health of private schools, both sectarian and nonsectarian, because such schools relieve taxpayers of the burden of educating additional students; and (3) private schools may serve as a benchmark for public schools.  
Mueller
, 463 U.S. at 395, 77 L. Ed. 2d at 728, 103 S. Ct. at 3067.  On the second prong of the 
Lemon
 test, the Supreme Court held that the Minnesota statute did not have the primary effect of advancing the sectarian aims of nonpublic schools.  The court noted that the tax deduction was only one of many tax deductions allowed by Minnesota.  Legislatures have broad latitude in creating classifications in tax statutes.  Thus, the legislature's judgment regarding a tax deduction for educational expenses was entitled to substantial deference.  
Mueller
, 463 U.S. at 396, 77 L. Ed. 2d at 728-29, 103 S. Ct. at 3067-68.  The deduction was available for educational expenses incurred by all parents, including those who attended public and nonsectarian private schools.  
Mueller
, 463 U.S. at 397, 77 L. Ed. 2d at 729, 103 S. Ct. at 3068.  

The Court recognized that financial assistance provided to parents has an economic effect comparable to that of aid directly given to the schools attended by their children.  However, the court noted, under Minnesota's arrangement, public funds become available only as a result of numerous private choices of individual parents.  Thus, the means by which state assistance flows to private schools is a material consideration.  
Mueller
, 463 U.S. at 399, 77 L. Ed. 2d at 730-31, 103 S. Ct. at 3069.  The Court rejected petitioners' argument that, in practical application, the benefit of the Minnesota statute would inure almost exclusively to sectarian schools.  Petitioners provided the Court with a statistical analysis supporting their argument.  The Court rejected this, stating that it would be "loath to adopt a rule grounding the constitutionality of a facially neutral law on annual reports reciting the extent to which various classes of private citizens claimed benefits under the law."  
Mueller
, 463 U.S. at 401, 77 L. Ed. 2d at 732, 103 S. Ct. at 3070.  

On the third part of the 
Lemon
 test, the Supreme Court found that the statute did not foster an excessive entanglement between the State and religion.  The only possible entanglement would consist of the necessity to determine which books and materials qualified for the deduction.  This type of decision had previously been held not to constitute an excessive entanglement.  
Mueller
, 463 U.S. at 403, 77 L. Ed. 2d at 733, 103 S. Ct. at 3071.

2. 
Applying Establishment Clause 

Precedent to the Credit

We conclude that the above cases 
support the constitutionality of the Credit.  We note that plaintiffs challenged the constitutionality of the statute on its face.  The effect of the statute as applied is unknown at this time.  Therefore, we reject, as did the Supreme Court in 
Mueller
, 463 U.S. at 401, 77 L. Ed. 2d at 732, 103 S. Ct. at 3070, plaintiffs' attempt to use statistical evidence to show that the primary benefit of the Credit will inure to parents who send their children to sectarian schools.  

We find 
Mueller
 to be particularly applicable here.  Applying the first 
Lemon
 factor to this case, we conclude that the statute creating the Credit has a secular legislative purpose.  Like the Minnesota statute, the Illinois statute seeks to assist parents in meeting the rising costs of educating their children.  As was the case in 
Mueller
, 463 U.S. at 395, 77 L. Ed. 2d at 728, 103 S. Ct. at 3067, such assistance has a secular purpose of ensuring that Illinois children are well educated.  In addition, the State has an interest in maintaining the financial health of private schools, because those schools relieve the taxpayers of the burden of educating these private school students.

As to the second prong of the 
Lemon
 test, we note, as did the Supreme Court in 
Mueller
, 463 U.S. at 396, 77 L. Ed. 2d at 729, 103 S. Ct. at 3067, that the Credit is but one of many tax credits allowed by our tax laws.  See, 
e.g.
, 35 ILCS 5/206 (West 1998) (tax credit for coal research and coal utilization equipment); 35 ILCS 5/208 (West 1998) (tax credit for residential real property taxes).  Also, the Credit is equally available to all parents of public school children, as well as to those who send their children to private nonsectarian or sectarian schools.  

Plaintiffs complain that the $250 threshold expenditure limit virtually guarantees that the vast majority of public school parents will not be able to claim the credit.  As we have stated, we reject plaintiffs' attempt to transform their facial challenge to the Credit into a challenge to the statute as applied.  The statute is facially neutral with respect to the availability of the credit to all parents of public and private school students.  Here, as in 
Mueller
, 463 U.S. at 399, 77 L. Ed. 2d at 730-31, 103 S. Ct. 3069, the public funds become available to schools only as the result of private choices made by individual parents.  The historic purposes of the establishment clause "simply do not encompass the sort of attenuated financial benefit, ultimately controlled by the private choices of individual parents, that eventually flows to parochial schools from the neutrally available tax benefit at issue in this case."  
Mueller
, 463 U.S. at 400, 77 L. Ed. 2d at 731, 103 S. Ct. at 3070.  

We thus conclude that the Credit satisfies the second prong of the 
Lemon
 test.  This conclusion is also supported by the Supreme Court's opinion in 
Zobrest
.  There, it held that the establishment clause did not bar a public school district from providing a sign-language interpreter to a student attending a Catholic high school.  
Zobrest
, 509 U.S. at 3, 125 L. Ed. 2d at 7, 113 S. Ct. at 2464.  The Court noted that the service provided was part of a general government program that distributed benefits neutrally to any child qualifying as disabled, without regard to the nature of the school the child attended.  Any government aid to religion occurred only as the result of the private decisions of individual parents.  
Zobrest
, 509 U.S. at 10, 125 L. Ed. 2d at 11, 113 S. Ct. at 2467.  

The third part of the 
Lemon
 test may be viewed as a separate inquiry or as part of the second 
Lemon
 prong, 
i.e.
, whether the statute has a primary effect of advancing or inhibiting religion. 
 Regardless of how this last prong is cast, the factors used to assess whether an entanglement is "excessive" are similar to those used to examine "effect."  
Agostini v. Felton
, 521 U.S. 203, 232, 138 L. Ed. 2d 391, 420, 117 S. Ct. 1997, 2015 (1997).

In 
Mueller
, 463 U.S. at 403, 77 L. Ed. 2d at 733, 103 S. Ct. at 3071, the Court found that the only plausible source of entanglement would lie in the fact that state officials must disallow deductions for materials used in teaching religious tenets.  The Court found such decisions not to foster an excessive government entanglement with religion.  Here, state officials, as in 
Mueller
, would be required to determine whether a taxpayer's claimed expenses met the definition of "qualified education expense" set forth in the statute.  Such a requirement differs little, if at all, from similar decisions required to be made with regard to any number of other tax deductions and credits allowed by Illinois law.  For these reasons, we find that the Credit does not foster an excessive government entanglement with religion.  

Accordingly, we reject plaintiffs' constitutional challenge to the Credit on the basis of section 3 of article I and section 3 of article X of the Illinois Constitution.

D. Section 1(a) of Article VII of the Illinois Constitution

This constitutional provision states:  "Public funds, property or credit shall be used only for public purposes."  Ill. Const. 1970, art. VIII, §1(a).  Our analysis in section C above disposes of plaintiffs' challenge to the Credit based on this constitutional provision.  The statute's secular purposes may also be characterized as public purposes.  State assistance to ensure that Illinois children are well educated is a public purpose, and the State's interest in maintaining the financial health of private schools is a valid public purpose.  We therefore conclude that the Credit does not violate section 1(a) of article VIII of the Illinois Constitution.

Section 2 of article IX of the Illinois Constitution requires reasonableness and uniformity in non-property-tax classifications.  It also states that "[e]xemptions, deductions, credits, refunds[,] and other allowances shall be reasonable."  Ill. Const. 1970, art. IX, §2.

Plaintiffs have apparently abandoned their argument that the Credit discriminates against low-income parents.  Instead, they argue that the Credit violates section 2 of article IX because the $250 expense threshold will disqualify nearly all parents of public school students.  While plaintiffs concede that the requirement that a taxpayer exceed a threshold expenditure level to claim a tax credit may not be unreasonable 
per
 
se
, they argue that the $250 
per
 
child
 threshold set here is unreasonable because it is unrelated to taxpayers' total financial burden of educating their children.

The sole requirement placed on tax credits by section 2 of article IX is that the "[e]xemptions, deductions, credits, refunds[,] and other allowances shall be reasonable."  Ill. Const. 1970, art. IX, §2.  Thus, our constitution recognizes that differences will exist in the deductions granted to various classes of taxpayers and merely imposes a requirement of reasonableness.  
Brown v. Department of Revenue
, 89 Ill. App. 3d 238, 243, 411 N.E.2d 882, 885 (1980).   

All parents of public or private school students who incur at least $250 of qualified education expenses are eligible to claim the Credit against their income tax liability.  To the extent that certain parents do not benefit from the Credit, it is because they incur lower costs in educating their children than do parents who meet the statute's requirements.  By creating the Credit, the legislature has recognized that parents who send their children to private schools often do so at considerable expense to themselves and that they provide a benefit to the State treasury by relieving the State and local taxpayers of the expense of educating their children.  It is an appropriate legislative goal to assist those schools in remaining financially viable.  Thus, we conclude that the Credit does not contravene section 2 of article IX of the Illinois Constitution.  

III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment dismissing plaintiffs' complaint and denying plaintiffs’ motion for summary judgment.

Affirmed.

McCULLOUGH and COOK, JJ., concur.

  

 

State of Illinois

APPELLATE COURT

Fourth District

INTER-OFFICE MEMORANDUM

To:  Darryl Pratscher, Clerk Date: January 31, 2001

     Judge McCullough 

     Judge Cook From: Rita B. Garman

     

    Subject: Toney v. Bower

    No. 4-00-0401/oral  

    GARMAN, McCullough, Cook

    
FILE OPINION

Concurrences have been received from the panel. Please file the Opinion in the above-entitled cause.

 Rita B. Garman

RBG/jr

cc:  Judge Steigmann

     Judge Myerscough

     Judge Knecht